Argued April 24, affirmed May 21, petition for rehearing denied
June 14, petition for review denied September 5, 1973

# STATE OF OREGON, *Appellant, v.* LAWRENCE WILLIAM BECICH (No. 72-3196), *Respondent.*

### 509 P2d 1232

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

This is an appeal by the state from an order suppressing evidence. Defendant's house was searched, pursuant to a search warrant, for two items of stolen property, an antique mantel clock and a portable television set. The search disclosed three large plastic bags of marihuana and defendant was indicted for criminal activity in drugs, ORS 167.207. The trial court suppressed the evidence without making find-

ings or stating the basis for its ruling.[1] We affirm.

It is necessary to an understanding of the issue to set out the relatively complex factual situation from which the problem arose.

A police officer investigating a house trailer burglary, which we will denote Burglary No. 1, went to the home of one Boley to question him about another matter. Boley was a suspect in Burglary No. 1 involving stereo equipment, which was also discussed with him. The officer said, with reference to Burglary No. 1: "Now, about the stereo equipment. I want it back." Boley said: "I know where it is and I'll get it back." The officer then asked him where it was and he replied that it was at defendant's house. The officer then asked Boley if he, Boley, had stolen it and he responded falsely that he had not, but that defendant and another had stolen it.[2] The officer then said, "Well, if you're going to get it back, I'll drive by and observe you loading it in the car," and he told Boley he could then give him the property at the Kennedy School parking lot which was in the vicinity. Boley advised the officer that he had to first go and drink some methadone, so the officer delayed his surveillance long enough, approximately 45 minutes, to return to the courthouse and have a cup of coffee, after which he drove past defendant's home and observed Boley loading boxes in the trunk of his car. Shortly thereafter, the officer met Boley at Kennedy School parking lot and received the several boxes involved in Burglary

[1] The order reflects that the court did state before allowing the motion that "* * * the court * * * [was] now * * * fully advised."

[2] The officer did not ask him if he had any permission or authority to enter the defendant's house, nor why he thought the property was there.

No. 1. In addition, Boley gave the officer another box which contained jewelry, an ornamental liquor bottle and other items which appeared to the officer also to have been stolen. Two days later the officer was advised of Burglary No. 2, which involved the trailer house adjacent to the trailer house of Burglary No. 1, and the property from the additional box was positively identified as the subject of Burglary No. 2. All of the property allegedly stolen in Burglary No. 2 was not included in the box, so the officer obtained a search warrant to look in defendant's house for the two missing objects, a mantel clock and a portable television. No stolen property was found, but it was in the process of this search that the officer found the marihuana which is the subject of the indictment herein.

The trial court suppressed the evidence, apparently on the ground that the initial removal of the stolen property from defendant's home was participated in by the officer without a search warrant and therefore the search warrant ultimately issued was void and the seizure of the marihuana was tainted with the initial illegality.

The state contends that Boley was not an agent of the police because he volunteered to get the property and the officer had reason to believe Boley was authorized to enter defendant's house. Additionally, with reference to Burglary No. 2, since the officer had not requested Boley to bring him this property, the causal connection between the illegal agency and the marihuana which was subsequently seized was broken and, third, even assuming Boley was the officer's agent for Burglaries Nos. 1 and 2, the marihuana was not the "fruit of the poisonous tree," in that it was not "come at by exploitation of that illegality." Maguire, Evidence of Guilt 221 (1959).

█ Evidence seized by a private individual, acting on his own, is not within the exclusionary protection of the Fourth Amendment to the U.S. Constitution, nor Art I, § 9 of the Oregon Constitution. *Burdeau v. McDowell,* 256 US 465, 475, 41 S Ct 574, 65 L Ed 1048, 13 ALR 1159 (1921); *State v. Padilla,* 9 Or App 162, 166-67, 496 P2d 256 (1972). However, an illegal search by a private party can be subject to constitutional controls if the private action is participated in by police officers. *Lustig v. United States,* 338 US 74, 69 S Ct 1372, 93 L Ed 1819 (1949). The purpose of the exclusionary rule in this type of case is to discourage officials from participating or engaging indirectly in searches which would be illegal if conducted by the official. It seems clear that exclusion of the evidence in this case would be in consonance with the purpose of the exclusionary rule if the extent of participation of the officer in the unlawful search was sufficient to make the police a party to the illegal search. The extent of official involvement in the total enterprise is the crucial element. *Raymond v. Superior Court,* 19 Cal App 3d 321, 96 Cal Rptr 678 (1971). Here the officer's request for the return of the stereo equipment was the initial causative element. Whether that alone would constitute official involvement is a close question which we need not here decide. The officer knew that it would be necessary for him to get a search warrant before he, the officer, could legally enter defendant's house. His further activity in conducting a surveillance of Boley while he was loading the boxes from defendant's home indicates a somewhat more than casual connection and perhaps even some sort of supervision over Boley's

activities.[9] We hold this to be sufficient official participation to taint the seizure with the initial illegality.

■ The state contends that the seizure of the marihuana was so far removed from the initial improper seizure as to dissipate the taint. An intervening act is required to purge the taint of the initial illegality.[10] *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963). Here there was no intervening act. The illegal seizure prompted the securing of the search warrant. The progression was straight, from the initial seizure to the search warrant, to the seizure of the marihuana.

Affirmed.

---

[9] *See* Stapleton v. Superior Court, 70 Cal 2d 97, 103, 73 Cal Rptr 575, 447 P2d 967 (1968) ("* * * [T]he police need not have requested or directed the search in order to be guilty of 'standing idly by'; knowledge of the illegal search coupled with a failure to protect the petitioner's rights against such a search suffices.").

[10] In State v. Sanford, 245 Or 397, 402, 421 P2d 988 (1966), the police conducted an illegal search of defendant's apartment. Thereafter, they obtained a search warrant and seized certain property in the apartment. Defendant moved to suppress the evidence seized but failed to show any connection between the illegal search and the property taken under the warrant. The court upheld the search under the warrant, but said: "* * * The original entry was illegal but it was not shown to have induced the subsequent securing of the warrant. * * *"