STATE OF NEBRASKA, APPELLEE, v. JERRY G. GUNDLACH, APPELLANT.

224 N. W. 2d 167

Filed December 12, 1974. Nos. 39488, 39489.

Paul E. Watts, J. Joseph McQuillan, Gerald E. Moran, and George R. Sornberger, for appellant.

Clarence A. H. Meyer, Attorney General and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

The State instituted two felony actions against the defendant which were consolidated prior to trial. Each action had one count for receiving or buying stolen goods and another count for receiving, buying, or concealing a stolen automobile. There were a total of four counts, two in each action. Each count covered the property of a different owner. Defendant was convicted on each of the four counts and sentenced to a term of 1 to 3 years on each count, the sentences to run concurrently. Defendant alleges nine assignments of error. They will be discussed seriatim. We affirm.

On June 19, 1973, Harold Cheesman, a parts manager for Omaha Airplane Supply, received a telephone call from the landlady of an apartment complex where

defendant had rented a garage. She inquired of Cheesman whether his company was missing any inventory. She told Cheesman she was suspicious of items in the garage rented to defendant, and he had her permission to check the garage.

Cheesman called the burglary division of the Omaha police department to give them the information. He was told to come to the police station the next morning. He did so, and there talked to two officers. The police told Cheesman they would not act without a criminal complaint, and suggested before he filed one he should establish that there was property missing from his inventory. Cheesman was also told that if he found something he should report back to the police.

Cheesman went to the garage and checked it after the landlady unlocked it for him. He returned to the police station and reported. At that time he did not definitely know if his company was missing any items. Two officers returned to the garage with him; they spoke to the landlady; and she identified the garage. The officers did not then have a search warrant and neither of them entered the garage on that trip.

Search warrants were later obtained for two garages rented to defendant. Items were discovered in both garages which subsequent investigation indicated had been obtained from Omaha Airplane Supply, defendant's employer, and Lang Aviation, both of which were located at Epply Field in Omaha. A pickup truck, missing since April 1972, was found in one garage, and another truck missing since January 1973, was found in the other garage.

Dallas Baker, an Omaha police officer who was not involved in the investigation, testified that sometime after June 20, 1973, the foreman at Lang Aircraft informed him that defendant wished to talk with him about whether there was a warrant for defendant and the procedure as to turning himself in to the author-

ities. Defendant subsequently called Baker. Pursuant to defendant's suggestion, they met in Council Bluffs, Iowa, and visited about the situation. Baker testified that during this conversation he indicated to defendant he did not believe defendant was "the one who instigated the caper," and asked him who was involved. Baker testified that defendant replied " 'I cannot answer that, Dallas. What good will it do to implicate the others?' " Defendant then stated "that he was sorry that he got involved."

Defendant's first assignment of error is that the evidence introduced against him was obtained in violation of the Fourth and Fourteenth Amendments to the United States Constitution. It is his theory that the police directed a private party to perform a search which would have been improper if the police had done so themselves. The warrants were obtained upon information learned through this allegedly illegal search. The evidence indicates there was no police participation or direction in Cheesman's search of the garage. The police refused to have anything to do with Cheesman's complaint until he found property missing and had reasonable grounds to believe the property was in the possession of the defendant. As defendant concedes, the action of the landlady in looking into the garage is not governed by the Fourth Amendment. The constitutional safeguard "was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies * * *." Burdeau v. McDowell (1921), 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159.

Unless a private citizen in making a search is acting as an agent for the police, his acts may not be attributed to them. Cheesman was acting in the interests of his employer and not under the direction of the police. At no time prior to the search pursuant to a valid warrant did any police officer enter the garage.

The facts do not constitute an agency or representative situation as urged by the defendant.

Defendant's next two assignments of error concern his conversation with Dallas Baker. Defendant argues the trial court erred in not making a finding prior to trial that defendant's statement was voluntary, and in not instructing the jury on that issue. The conversation was instigated by the defendant. At defendant's request it took place in Council Bluffs, Iowa, where Baker was no more than a private citizen from another state. Baker was a friend of the defendant. Although he was a police officer he was in no way connected with the official investigation of the case. There was no "in-custody interrogation," and the statements on the record were volunteered.

Prior to trial defendant filed a motion to suppress and exclude the statement made to Baker, on the theory that it was obtained in violation of the requirements of Miranda v. Arizona (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A. L. R. 3d 974. In that case the United States Supreme Court held: "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." After hearing, this motion was overruled and suppression denied.

In Hoffa v. United States (1966), 385 U. S. 293, 87 S. Ct. 408, 17 L. Ed. 2d 374, the court dealt with the testimony of an informer who was present during conversations between Hoffa and his trial counsel. In Hoffa, the court said: "The petitioner argues that his right under the Fifth Amendment not to 'be compelled in any criminal case to be a witness against himself' was violated by the admission of Partin's testimony. The claim is without merit. * * * In the present case no claim has been or could be made that the petitioner's incriminating statements were the product of any sort of coercion, legal or factual. The peti-

tioner's conversations with Partin and in Partin's presence were wholly voluntary. For that reason, if for no other, it is clear that no right protected by the Fifth Amendment privilege against compulsory self-incrimination was violated in this case."

Baker was called to testify for the State. Defendant's motion to suppress Baker's testimony had been heard 2 weeks previously before another judge and was overruled. No objection was made at the trial to the voluntariness of the conversation. The only objection made during Baker's direct examination was an objection on foundation to a question: "What was the substance of the conversation?" This objection was properly overruled.

Defendant's fourth assignment of error alleges the trial court erred in not allowing witness Junge to offer testimony which would impeach the credibility of Dallas Baker. No attempt had been made to confront Baker with any alleged prior inconsistencies. Our rule is: "Before a witness, not a party to the suit, can be impeached by proof that he made statements contradicting or differing from the testimony given by him upon the stand, a foundation must be laid by interrogating the witness himself as to whether he has ever made such statements." Meyers v. State (1924), 112 Neb. 149, 198 N. W. 871. The record is in some confusion. The witness was asked if he had received a phone call from Mr. Baker. His answer was, "Well, he came in person." The offer of proof was as to a statement made in the alleged telephone conversation which the witness had impliedly stated he had not had. In any event, the testimony as offered would not have contradicted any of Baker's testimony as it related to Baker's conversation with the defendant.

The fifth assignment of error complains of the refusal of the trial court to sustain defendant's motion for a directed verdict made at the end of the prose-

cution's case-in-chief and renewed at the end of the defendant's case. This is a perfunctory assignment of no conceivable merit. Defendant was found in the possession of stolen property and no explanation for such possession consistent with innocence was offered in defendant's defense.

Defendant's sixth assignment of error complains that the references to aiding and abetting in instructions Nos. 5, 6, 7, and 8 were confusing and misleading. He argues that except for Baker's testimony there is insufficient evidence to support the inclusion of aiding or abetting in the instruction. It may well be true that were it not for Baker's testimony the evidence would have been insufficient to support these instructions, but the fact remains that Baker's testimony was properly admitted and was sufficient to support them.

The seventh assignment of error attacks instruction No. 15 and supplemental instruction No. 1. Instruction No. 15 reads in part as follows: "Possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen." Because this is exactly the same instruction approved in Barnes v. United States (1973), 412 U. S. 837, 93 S. Ct. 2357, 37 L. Ed. 2d 380, defendant does not challenge it. His objection is directed to the point that the jury during the course of its deliberations requested a definition of the word "possession" as used in the instruction.

The trial court gave the following supplemental instruction: "Possession means to have a thing under ones (sic) dominion and control. There is actual possession, which means in the personal custody of the individual or there is constructive possession which means that the property is not in the actual physical

possession of the person charged but such person has dominion and control over the property." Defendant objects to this instruction because it omits any reference to knowledge. He claims the supplemental instruction puts undue emphasis on a part of the evidence.

Instructions, including supplemental instructions, must be considered as a whole. As we said in State v. Brown (1962), 174 Neb. 393, 118 N. W. 2d 332: "Instructions must be considered as a whole in determining whether a particular instruction or a part thereof is prejudicial." The instructions as a whole made it clear that knowledge was a necessary element to be found before a guilty verdict could be rendered. When the jury asked for clarification of "possession" it was not asking what knowledge meant, but was asking for a definition of possession. The supplemental instruction was not prejudicial and did not over-emphasize one part of the evidence.

Assignments of error 8 and 9 complain that the sentence imposed is excessive and constitutes a breach of judicial discretion. Defendant was sentenced to a term of 1 to 3 years on each of the four counts, the sentences to run concurrently. The sentence under section 28-508, R. R. S. 1943, for receiving stolen goods, is imprisonment in the Nebraska Penal and Correctional Complex not more than 7 years nor less than 1 year. The penalty under section 28-522, R. R. S. 1943, for stealing or receiving stolen automobiles, is imprisonment in the Nebraska Penal and Correctional Complex for not less than 1 year nor more than 10 years. The sentences imposed were well within the range provided by law, and were made to run concurrently. Considering the volume of the property taken, and the fact it was taken over a long period of time, the trial court did not abuse its discretion. As we said in State v. Harig (1974), *ante* p. 49, 218 N. W. 2d 884: "We have repeatedly ruled that where the punishment of an of-

fense created by statute is left to the discretion of the court, to be exercised within certain prescribed limits a sentence imposed within such limits will not be disturbed on appeal unless there appears to be an abuse of discretion."

Defendant argues that the sentencing court abused its discretion in considering defendant's failure to cooperate as a factor militating against probation. It is true, as defendant notes, that section 29-2260, R. S. Supp., 1972, says nothing about cooperating with a probation officer. However, one of the basic principles in determining the appropriate sentence is the possibility of rehabilitation. Before one can be successfully rehabilitated he must cooperate, and a lack of cooperation prior to sentencing could be a strong indication that the lesser restrictions of probation may not be sufficient to effect a purposeful rehabilitation.

Referring specifically to subdivisions (i) and (j) of section 29-2260(3), R. S. Supp., 1972, we cannot say that the record herein shows an attitude on the part of the defendant such as to indicate that he is unlikely to commit another crime, or that he is likely to respond affirmatively to probationary treatment. The same factors which prevented him from cooperating fully with the authorities would certainly be sufficient to indicate that he could easily be further involved in criminal activity. The trial court, with its more personal knowledge of the defendant, is in a better position to judge the likelihood of the effectiveness of probation than this court. We are unable to say that the trial court abused its discretion in refusing probation and sentencing the defendant to the Penal and Correctional Complex.

For the reasons given, the judgment of the trial court is affirmed.

AFFIRMED.