Jerry G. GUNDLACH, Petitioner,

v.

Theodore J. JANING, Sheriff of Douglas County, and Robert F. Parratt, Warden of the Nebraska Penal and Correctional Complex, Respondents.

Civ. No. 75-0-177.

United States District Court, D. Nebraska.

Oct. 13, 1975.

David L. Herzog and J. Patrick Green, Omaha, Neb., for petitioner.

Donald L. Knowles, County Atty. of Douglas County, Neb., for respondent Janing.

## MEMORANDUM

DENNEY, District Judge.

This habeas corpus case comes before the Court pursuant to Title 28 U.S.C. § 2254 subsequent to the submission of briefs and a stipulation that the case be decided on the record of the state court proceedings.

Petitioner's application for writ of habeas corpus presents the question of whether a search conducted by a private person after his contact with the police is a governmental search in violation of the fourth and fourteenth amendments.

Petitioner was tried by jury in the District Court of Douglas County, Nebraska, and found guilty on February 22, 1974, upon two felony charges, each of which contained two counts: one count for receiving or buying stolen goods, and another count for receiving, buying, or concealing a stolen automobile. Petitioner was sentenced on each count to serve a term of one to three years, to run concurrently.

The conviction of petitioner was affirmed by the Supreme Court of Nebraska, *State v. Gundlach*, 192 Neb. 692, 224 N.W.2d 167 (1974), *cert. denied* 421 U. S. 933, 95 S.Ct. 1663, 44 L.Ed.2d 92 (1975). A statement of the facts surrounding the private party's search appears at 192 Neb. at 693–694, 224 N.W. 2d at 169:

On June 19, 1973, Harold Cheesman, a parts manager for Omaha Airplane Supply, received a telephone call from the landlady of an apartment complex where defendant had rented a garage. She inquired of Cheesman whether his company was missing any inventory. She told Cheesman she was suspicious of items in the garage rented to defendant, and he had her permission to check the garage.

Cheesman called the burglary division of the Omaha police department to give them the information. He was told to come to the police station the next morning. He did so, and there talked to two officers. The police told Cheesman they would not act without a criminal complaint, and suggested before he filed one he should establish that there was property missing from his inventory. Cheesman was also told that if he found something he should report back to the police.

Cheesman went to the garage and checked it after the landlady unlocked it for him. He returned to the police station and reported. At that time he did not definitely know if his company was missing any items. Two officers returned to the garage with him; they spoke to the landlady; and she identified the garage. The officers did not then have a search warrant and neither of them entered the garage on that trip.

Search warrants were later obtained for two garages rented to defendant. Items were discovered in both garages which subsequent investigation indicated had been obtained from Omaha Airplane Supply, defendant's employer, and Lang Aviation, both of which were located at Eppley Field in Omaha.

Petitioner contends that Cheesman's search was governmental and that the fruits of it, the two subsequent police searches, were inadmissible under the fruit of the poisonous tree doctrine, *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In essence, petitioner's theory is that the government officials had knowledge that Cheesman might make an unlawful entry of the premises and, having refrained from deterring him, in effect participated in Cheesman's unlawful search.

The Court deems the following testimony appearing in Volume I, Bill of Exceptions, to be relevant to the issue of the government's knowledge:

Q. Mr. Chessman, calling your attention to a previous conversation we had in Court—perhaps if I start with the question or two before, this will refresh your recollection. This is on page 17 of the preliminary hearing transcript, beginning with line 10.

My question to you was: "Did Lieutenant Dolan tell you anything to do when you were going to go over there?" And you responded, "Strictly offered suggestions, and I was asking for help."

. . . . . .

Q. Again calling your attention to the transcript from the preliminary hearing, the next question was: "Well, what were the suggestions?" And you responded, "At this point, I asked for somebody to go with me. They didn't feel they should send anybody with me until after I had seen if there was anything in there. And after that, they said that I should file a complaint, come back and file a complaint."

. . . . . .

Q. So then, one or both of the Officers must have indicated that you could go there?

A. They never did say I could or couldn't go. They just refused to give me any help.

Q. But you did choose to go there after your conversation?

A. I did choose to go.

Q. But you still didn't know whether or not you could?

A. Not really. They told me that if I went there and I did find something, then to report it back to them. And that's what I did. (Cheesman testimony, 11:15–23, 12:17–24, 13:14–23)

. . . . . .

Q. Now, Lieutenant Dolan, did you ever direct Mr. Cheesman to go to the garage?

A. No, I did not.

Q. Did you ever authorize him to go to the garage?

A. I told him he could go if that was his desire. He had to make up his own mind what he wanted to do.

Q. And then you told him if he did go and if he did find something that was stolen, you would do what your job entails and follow up on that?

A. That's correct.

(Dolan testimony, 30:11–20)

The Court finds that the police knew in advance that Cheesman might make an unlawful entry and they took no steps to deter him. After he had made the unlawful entry, they utilized the information that he had gained to obtain a search warrant.

## CONCLUSIONS OF LAW

In *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), the Court ruled that the use in a criminal prosecution of personal papers stolen from the accused by a priate individual did not violate the accused's fourth amendment rights when the government was in no way involved in the theft. The Court held:

In the present case the record clearly shows that no official of the federal government had anything to do with the wrongful seizure of the petitioner's property, or any knowledge thereof until several months after the property had been taken from him and was in the possession of the Cities Service Company. It is manifest that there was no invasion of the security afforded by the Fourth Amendment against unreasonable search and seizure, as whatever wrong was done was the act of individuals in taking the property of another. *Id.* at 475, 41 S. Ct. at 576.

In *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), the Supreme Court held that the federal government could not properly use evidence illegally obtained by state agents, and thus abrogated the "silver platter" doctrine. Although *Burdeau* has been challenged in cases decided after the Court's holding in *Elkins v. United States, supra*, the *Burdeau* holding has never been overruled.

Cases holding that fourth amendment rights have been violated by private persons have usually involved searches conducted by private persons under the active supervision of state or federal authorities. *See, e. g., United States v. Newton*, 510 F.2d 1149 (7th Cir. 1975); *United States v. Payne*, 429 F.2d 169 (9th Cir. 1970); *Knoll Associates, Inc. v. F. T. C.*, 397 F.2d 530 (7th Cir. 1968); *State v. Becich*, 13 Or.App. 415, 509 P.2d 1232 (1973); *Stapleton v. Superior Court of Los Angeles*, 70 Cal.2d 97, 73 Cal.Rptr. 575, 447 P.2d 967 (1968); *Moody v. United States*, 163 A. 2d 337 (D.C.Mun.App.1960). Petitioner urges this Court to extend the rule of these cases and hold that the knowledge and inaction of the police in failing to advise Cheesman that he could not legally enter the garage was sufficient governmental action to invoke the fourth and fourteenth amendment.

In support of petitioner's argument, reliance is placed upon several cases which have discussed governmental knowledge of and acquiescence in a private party's illegal search. In *United States v. Mekjian*, 505 F.2d 1320 (5th Cir. 1975), the court stated:

The decision here, then, finally revolves around the factual sitution with regard to government participation and government knowledge that an illegal search was being conducted and that the government would be the beneficiary of such misconduct. If government officials were aware, or should have been aware, that Mrs. Jones was removing and copying records for their use, they will not be permitted to stand by or blink their eyes and accept the benefit of her activities. On the other hand, absent governmental knowledge actual or implicit, that she would continue to copy records after her phone call with Mr. McDonnell and absent encouragement or cooperation, the evidence was admissible. *Id.* at 1328.

Similarly, in *United States v. Clegg*, 509 F.2d 605 (5th Cir. 1975), the court stated:

It is only when the government has pre-knowledge of and yet acquiesces in a private party's conducting a search and seizure which the government itself, under the circumstances, could not have undertaken that the problem discussed in *United States v. Mekjian*, 505 F.2d 1320 (5th Cir. 1975) arises. Pre-knowledge and acquiescence make a search by a private party a search by the government. Fourth Amendment standards must be complied with. Any evidence which, for Fourth Amendment reasons, would have been excluded had it been gathered by the government pro se would, of course, have to be excluded if gathered by the only nominally private party. It would be excluded with the aim of deterring the government from further attempts to utilize knowingly the services of a private party to do for it that which it is forbidden to do for itself. *Id.* at 609.

■ The Supreme Court has held that the decisive factor in determining whether a search is a government one "is the actuality of a share by a (government) official in the total enterprise of securing and selecting evidence by other than sanctioned means." *Lustig v. United States*, 338 U.S. 74, 79, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819 (1949); *United States v. Mekjian, supra*, at 1328. As Mr. Justice Clark held in a landmark case discussing state responsibility under the equal protection clause of the fourteenth amendment "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the

State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, at 722, 81 S.Ct. 856, at 860, 6 L. Ed.2d 45 (1961). The Court therefore rejects petitioner's argument that governmental knowledge of an illegal search and acquiescence is per se an unreasonable search in violation of the fourth and fourteenth amendments. The decision in this case must depend on the factual circumstances.

■ The purpose of the exclusionary rule in this type of case is to discourage officials from participating in or encouraging "private" searches which would be illegal if conducted by the government. The government may not accomplish by circuitous means what they themselves cannot properly accomplish. "It is the duty of the courts to be watchful for the constitutional rights of the citizens, and against any stealthy encroachments thereon." *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L. Ed. 746 (1886).

In determining whether the search in this case is governmental, the Court finds the "airline search" cases to be instructive. In *United States v. Wilkerson*, 478 F.2d 813 (8th Cir. 1973), the Eighth Circuit held:

[S]earches of luggage by airline employees are private searches that are invulnerable to fourth amendment attack so long as the searches are conducted by the carrier for its own purpose and without the instigation or participation of government officers. *Id*. at 815.

*See also United States v. Echols*, 477 F. 2d 37 (8th Cir.) *cert. denied* 414 U.S. 825, 94 S.Ct. 128, 38 L.Ed.2d 58 (1973); *United States v. Burton*, 475 F.2d 469 (8th Cir.) *cert. denied* 414 U.S. 835, 94 S.Ct. 178, 38 L.Ed.2d 70 (1973).

In *United States v. Cangiano*, 464 F. 2d 320 (2nd Cir.), *vacated on other grounds* 413 U.S. 913, 93 S.Ct. 3047, 37 L.Ed.2d 1023 (1972), *remanded* 491 F.2d 905, *cert. denied* 418 U.S. 934, 94 S.Ct.

3223, 41 L.Ed.2d 1171 (1974), the government agent advised officials at Emery Air Freight that he believed that several packages delivered for shipment contained matter other than as indicated by the consignor on the package. The manager of Emery then removed the packages to a .conference room and opened them. The Emery official found that the packages contained magazines and films and requested and received a movie projector from the FBI. The court held that "while the initial stimulus to inspect came from the FBI and Emery undoubtedly did not wish to incur disfavor, Emery had its own reasons for examining the contents of the packages." *Id*. at 324.

■ Although the airport search cases are distinguishable from this case because the airlines act pursuant to their duty to insure that luggage does not present a danger, the cases are appropriate authority for the proposition that the intent of the private person in conducting a search with governmental knowledge that the search might take place is a proper factor for consideration.

In petitioner's appeal to the Nebraska Supreme Court, the court found that "Cheesman was acting in the interests of his employer and not under the direction of the police." 192 Neb. at 695, 224 N. W.2d at 170.

■■ Under the facts presented in this case, mere knowledge that Cheesman might conduct an illegal private search without taking any deterrent action is insufficient to turn the private search into a governmental one. In determining state action in race discrimination cases, the Supreme Court has placed emphasis on whether the government's action or inaction in any way fostered or encouraged racial discrimination. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). Similarly, the Court holds that a search conducted by a private party is a governmental search which must com-

ply with the fourth and fourteenth amendments when the government has in some manner instigated or encouraged the search.

In *United States v. Luciow*, 518 F.2d 298 (8th Cir. 1975), the appellant's residence was searched pursuant to a federal search warrant. Luciow contended that the search warrant was invalid because the paid informant who supplied the information which formed the basis of the application for the search warrant obtained the information by an illegal entry of Luciow's residence. The Eighth Circuit assumed that the informant, who had been working for a government agent for at least eight months, entered Luciow's apartment as a trespasser. The court held:

> There is, however, no evidence in the record that agent Andersen or any other federal or state officer involved in the July 9, 1974, search directed, authorized or knew of any illegal entry by Stenseth on Luciow's property. Before her action can be attributed to the government, *some degree of governmental instigation of the illegal entry must be shown.* (Emphasis supplied). *Id.* at 300.

Here, there is no evidence that the police instigated or influenced Cheesman to conduct the search. Cheesman conducted the search in order to establish that his employer's property was missing. It was an investigation by the employee of a corporation who was intent upon protecting his employer's property rights. The Supreme Court held in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971):

> The exclusionary rules were fashioned "to prevent, not to repair", and their target is official misconduct. They are "to compel respect for the constitu-

tional guaranty in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669. But it is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals. *Id.* at 488, 91 S.Ct. at 2049.

There is an additional basis upon which the Court concludes that Cheesman's search did not violate the fourth amendment. The fourth amendment protects the right of the people to be secure against unreasonable searches and seizures. That a search conducted by the police violates the fourth amendment does not necessitate the conclusion that the same search, if conducted by a private person with the government's knowledge, would also violate the fourth amendment. Clearly the police could not have searched the garage with the landlady's consent absent a search warrant. *Cf. Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). However, the Court concludes that the search by Cheesman with prior police knowledge that he might conduct the search was not an unreasonable search in the constitutional sense. The degree of governmental knowledge and participation, as well as the conduct of Cheesman in entering the premises with a key given to him by the landlady for the purpose of viewing the stolen goods, compel the Court's conclusion that the search was not an unreasonable search in violation of the fourth amendment.

Petitioner's application for writ of habeas corpus is denied. An order is filed contemporaneously herewith in accordance with this memorandum opinion.