STATE OF NEBRASKA, APPELLEE, V. JOHN R. HARRISON,
APPELLANT.

357 N.W.2d 201

Filed October 26, 1984.   No. 84-140.

David L. Herzog, for appellant.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

KRIVOSHA, C.J.

The appellant, John R. Harrison, was convicted, after trial to a jury, of first degree sexual assault in violation of Neb. Rev. Stat. § 28-319 (Reissue 1979). This is a Class II felony punishable by imprisonment of not less than 1 nor more than 50 years. Following his conviction, Harrison was sentenced to the Nebraska Penal and Correctional Complex for a term of not less than 7 nor more than 10 years. It is this conviction from which he now appeals, maintaining that the trial court erred in refusing to suppress testimony regarding a pretrial lineup identification of Harrison by the victim, due to the fact that

Harrison was illegally arrested without a warrant, and that the trial court erred in permitting the testimony of a forensic serologist concerning pubic hair found on the victim. Our review of the record discloses that the assignments of error are without merit and the conviction must be affirmed.

The evidence discloses that in the early afternoon of March 30, 1983, the victim, a 31-year-old female, went for a walk near Standing Bear Lake located at 144th and Fort Streets in Omaha, Nebraska. While nearing the completion of her walk, she was passed on the bicycle path by a male riding what she later described as a blue Kawasaki motorcycle. The rider stopped the motorcycle on the path of the victim and appeared to be fixing the vehicle as she passed him. He then came up from behind her, grabbed her, and held her face to face. The record then discloses a series of events which we need not detail, but which, if believed by the jury, clearly established that the victim was criminally assaulted in violation of § 28-319. While we need not detail the sordid events, we do point out that during the attack, the victim was afforded more than ample opportunity to see the attacker so that she could unquestionably identify the attacker upon seeing him again.

Following the assault, the victim returned to her car, drove to her apartment, and called her girl friend. Together, they proceeded to a local hospital, where the victim was examined for injuries sustained as a result of the attack. Specimens of her pubic hairs were also taken at the hospital. While still in the hospital, the victim, on two different occasions, gave a description of the attacker to two Omaha police officers. She also described the motorcycle as a blue Kawasaki.

Approximately 2 months after the assault, one of the investigating officers was patrolling in an unmarked police car near the area where the attack occurred. He noticed a man riding a blue motorcycle on the bicycle path and attempted to stop him. Unable to do so, the officer radioed to a second officer to assist him in pursuing the motorcycle. The second officer pursued the suspect until the suspect reached a dead end. At this point the officer identified himself as a police officer and ordered the suspect to stop in order to permit the officer to speak to him. The suspect jumped the curb with his motorcycle

and drove up an embankment 30 to 35 feet high.

A third officer was summoned and asked to stop the suspect. The third officer initiated a chase, with red lights, flashers, and siren on. With the officer in pursuit the suspect continued another 2 miles before abandoning the motorcycle and fleeing on foot. The motorcycle was impounded, and the police attempted to identify the owner. The police were able to determine that the last owner was James C. Harrison, appellant's brother, who resided at an address in Omaha. The victim identified the impounded motorcycle as resembling the one her assailant rode.

On May 26, 1983, 2 days after the motorcycle was impounded, the first two investigating officers went to the home of the registered owner. No one was at home when they first arrived, but the officers were informed by a young man who stopped by the house that James Harrison no longer owned the motorcycle because he had given it to the appellant. Two hours later, the officers returned to the house. They observed two young men working on a car in the driveway. One of the officers recognized John Harrison, one of the individuals, as the party involved in the motorcycle chase. The officers, without an arrest warrant, placed John Harrison under arrest.

Following the arrest, the victim was summoned to police headquarters to view a lineup containing Harrison. She positively identified Harrison as her assailant. Subsequently, a forensic serologist employed by the Nebraska State Patrol Criminalistics Laboratory examined pubic hairs of Harrison and compared them with the hair found on the victim which did not match her standard pubic hair. According to the serologist's testimony at trial, Harrison could not be excluded as a suspect, based upon similar characteristics of his standard pubic hair and the one found on the victim. The serologist did not attempt to testify that Harrison was the individual who committed the attack, but only that he could not be excluded from a group, based upon these similar characteristics.

Prior to trial, Harrison moved to suppress the pretrial identification as the fruit of an illegal arrest made without a warrant. The trial judge overruled the motion and found that

the police had probable cause to believe that a felony had been committed and that Harrison had committed the offense. The trial court further overruled Harrison's objection to the serologist's testimony.

With regard to Harrison's first assignment of error, that the pretrial lineup identification should have been suppressed because it was the fruit of an illegal arrest, we believe that the argument is not correct.

While it is true that under the guarantees of both the U.S. Constitution and the Constitution of the State of Nebraska, one may not be arrested without probable cause, see, *Gerstein v. Pugh*, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975), and *State v. Vicars*, 207 Neb. 325, 299 N.W.2d 421 (1980), it is likewise true that probable cause to arrest exists at the moment when the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed. See, *Brinegar v. United States*, 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925). In *State v. Hack and Callans*, 212 Neb. 406, 407-08, 322 N.W.2d 806, 808 (1982), this court said:

> Probable cause for an arrest exists if the officer has reasonable cause to believe that the person arrested has committed a felony. Probable cause does not require that the officer see the commission of a felony. " 'Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction,'. . . ." *State v. Brewer*, 190 Neb. 667, 674-75, 212 N.W.2d 90, 94 (1973).
>
> If the facts available to the officer at the time of the arrest would warrant a man of reasonable caution in the belief the action was appropriate, then probable cause exists.

Further, in determining what constitutes probable cause, we noted in *State v. Nowicki*, 209 Neb. 640, 645-46, 309 N.W.2d 89, 93 (1981):

> " '[T]he test of probable cause . . . is whether at the moment the facts and circumstances within their (the

officers') knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.' " In this regard, we have also held that probable cause is to be evaluated by the collective information of the police engaged in a common investigation.

That is to say, we have regularly held that the standard of probable cause is not to be viewed in a technical sense, but, rather, it takes form after analysis of the underlying circumstances of each particular case. See, *Beck v. Ohio*, 379 U.S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *Brinegar v. United States, supra; State v. Jones*, 213 Neb. 1, 328 N.W.2d 166 (1982); *State v. Dussault*, 193 Neb. 122, 225 N.W.2d 558 (1975); *State v. Atwater*, 193 Neb. 669, 228 N.W.2d 876 (1975).

Further, in view of the fact that the evidence establishes that the arrest occurred on the driveway and not within Harrison's home, no arrest warrant was required. See, *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *State v. Horn, ante* p. 524, 357 N.W.2d 437 (1984); *State v. Tipton*, 206 Neb. 731, 294 N.W.2d 869 (1980); *State v. Schlothauer*, 206 Neb. 670, 294 N.W.2d 382 (1980).

From the evidence in this case it appears clear that at the time that Harrison was arrested on the driveway of his home, the officers had probable cause for the arrest. One of the officers recognized Harrison as the individual who had, 2 days earlier, fled when the officers attempted to stop him and make an investigation. Additionally, the officers had reason to believe that the motorcycle in their possession belonged to Harrison and that Harrison resembled the attacker. This certainly was sufficient to establish probable cause. The arrest was lawful and valid, and so too was the testimony regarding the lineup.

That leaves us with Harrison's final assignment of error regarding the admissibility of the forensic serologist's testimony. Harrison's argument apparently is based upon some notion that because the witness did not positively identify Harrison, her testimony was therefore inadmissible. This may go to the weight of her testimony but not to the admissibility of the evidence. The admission of expert testimony is ordinarily

within the trial court's discretion, and its ruling will be upheld in the absence of a showing of an abuse of discretion. See *State v. Jones, supra*.

While we have not heretofore considered the admissibility of the testimony of an expert in the context of microscopic hair analysis, other jurisdictions have had occasion to do so and generally have upheld its admissibility. See, *People v Hayden*, 125 Mich. App. 650, 337 N.W.2d 258 (1983); *People v Allweiss*, 48 N.Y.2d 40, 396 N.E.2d 735, 421 N.Y.S.2d 341 (1979); *State v. Lerch*, 296 Or. 377, 677 P.2d 678 (1984); *State v. Williams*, 657 S.W.2d 405 (Tenn. 1983); *State v. Batten*, 17 Wash. App. 428, 563 P.2d 1287 (1977).

The fact that the testimony offered by the forensic serologist did not positively identify Harrison did not make the evidence inadmissible. It was not offered for the purpose of identifying Harrison, but only to show that he could not be excluded from the class of possible suspects. We are persuaded by the reasoning expressed by the Illinois Appellate Court in the case of *People v. Columbo*, 118 Ill. App. 3d 882, 962-63, 455 N.E.2d 733, 791 (1983), where the court noted:

> We do not find, however, that either the exclusionary character of hair comparisons or the lack of absolute scientific certainty renders [the expert's] testimony inadmissible. Instead, we adhere to the well-established rule that an expert's lack of absolute certainty goes to the weight of his testimony, not to the admissibility. [Citations omitted.] Moreover, we find that the determination that one [of the defendant's] hair standards was similar in color and characteristics to one found on [the victim's] T-shirt had probative value and, although not conclusive, was definitely proper to be considered by the jury and properly admitted by the trial court.

Likewise, in the case of *United States v. Hickey*, 596 F.2d 1082, 1089 (1st Cir. 1979), the U.S. Court of Appeals for the First Circuit observed:

> It was brought out by the witness that hair identifications, unlike fingerprint identifications, do not point to just one individual as the source. The jury was made well aware of the limitations of this evidence. On the other hand, the

link between the sweater and mask and the robbery was strong, and the similarity of the hairs, while not affirmatively implicating Ferreira, "enhanced the probability of guilt" and was therefore probative.

While the evidence offered by the forensic serologist, standing alone, may have been insufficient to establish guilt, when considered in light of all the other evidence, including the victim's testimony, it did have probative value and could be considered by the jury for whatever benefit it may provide it. The weight to be given the testimony was for the jury to determine. In *United States v. Cyphers*, 553 F.2d 1064, 1072 (7th Cir. 1977), the U.S. Court of Appeals for the Seventh Circuit, in a similar case, stated:

> The weight to be assigned the opinion in view of the expert's admission that the hairs could also have come from persons other than the defendants was a matter for the jury to determine. Where a witness properly qualified as an expert bases his opinion on what he believes to be a reasonable scientific inference, his opinion should ordinarily be admitted subject to cross-examination concerning the propriety of the testing technique used and the validity of the conclusions drawn from his observations.

The situation presented to us here is not similar to that presented in the case of *Clearwater Corp. v. City of Lincoln*, 202 Neb. 796, 277 N.W.2d 236 (1979), as urged by Harrison. In *Clearwater* the expert attempted to render opinions which were unsupported by the scientific facts available to him. That is not the case here. The expert in this case carefully pointed out that she could not positively identify Harrison as the attacker, but only that, because of the tests, he fell within the category of those persons having similar characteristics. We therefore hold that it is admissible and proper for a forensic serologist to testify that pubic hairs found on a victim are similar in character to the accused's standard pubic hairs, thereby showing that the accused cannot be excluded from the class of possible suspects. Such testimony has probative value and may be considered by the jury, although the weight to be given such testimony is for the jury to decide.

For these reasons, therefore, we believe that the trial court was correct in its rulings and that the conviction and sentence must in all respects be affirmed.

AFFIRMED.