STATE OF NEBRASKA, APPELLEE, V. DAVID E. WARE, APPELLANT.

365 N.W.2d 418

Filed March 29, 1985.   No. 84-513.

James Martin Davis, for appellant.

Paul L. Douglas, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

Following waiver of a jury, the defendant was convicted by trial to the court of first degree murder. He has appealed and assigns as errors that (1) the court erred in admitting into evidence a statement of the defendant obtained as a product of an illegal arrest and (2) the court erred in admitting into evidence certain items of evidence unlawfully seized from the defendant without a search warrant. We affirm.

On December 20, 1983, Charles Malstead, owner of Malstead Music Center in Omaha, was shot and killed while in his store. At approximately 6:30 p.m. the victim was discovered face down behind the counter in his music shop. During the course of the police investigation, it was discovered that the victim's wallet, keys, and automobile were missing.

Later that evening, the defendant approached a police officer on the grounds of Boys Town and indicated that he had

left his car in the parking lot. This automobile, which the defendant claimed was his, was the one belonging to the victim.

The following day, December 21, the police were notified by the owner of Brown's Music Store that an individual had traded in two new Vantage guitars sometime after 6 p.m. the previous day. The guitars were of a type which was sold locally only at the Malstead Music Center. This individual said he had purchased the guitars from Malstead's. Both the owner and an employee identified a picture of David Ware, the defendant, as being the person who traded in the guitars. A latent print from one of the guitars was identified as belonging to the defendant.

Also on December 21 the police went to Boys Town to pick up the vehicle registered there by the defendant and belonging to the victim. Officers then went to the defendant's living quarters at Boys Town and spoke with his family teachers, who resided with him and other students. The teachers stated that Ware had been dropped off at the bus line at 9 a.m. the previous day and did not return until approximately 10 p.m.

After being told that the defendant was a suspect in a homicide case, one of the teachers advised that he makes regular checks of the residents' rooms, and he wanted to check Ware's room. The officers waited until the teacher returned, at which time he gave them a suicide note which was found in a wastebasket.

Based on all of this information, the police obtained a search warrant for the home owned by the defendant's mother, which was defendant's city residence. Upon their arrival at this home on December 21, the defendant himself answered the officers' knock. After identifying themselves and advising that they had a search warrant, the officers placed David Ware under arrest for first degree murder. The defendant was taken to the police station, and after having been read his rights and interrogated, he confessed to shooting and robbing Charles Malstead. The defendant then led the police to the area in which the murder weapon was thrown, and the gun was subsequently recovered there.

The defendant's first assignment of error is based on the premise that he was illegally arrested. This argument takes two forms: (1) The arrest, in his home without an *arrest* warrant, is

in violation of *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); and (2) The arrest was without probable cause.

In *Payton v. New York, supra,* the U.S. Supreme Court ruled that a completely warrantless, nonconsensual entry into one's home for the purpose of making a felony arrest was unconstitutional in the absence of exigent circumstances. The Court found the following reasoning to be persuasive:

> "To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present."

445 U.S. at 589 (quoting *United States v. Reed*, 572 F.2d 412 (2d Cir. 1978), *cert. denied* 439 U.S. 913, 99 S. Ct. 283, 58 L. Ed. 2d 259).

In examining fourth amendment rights, the Court noted substantial similarities in the intrusiveness of an entry of the home to search for property and to search for a person.

> But the critical point is that any differences in the intrusiveness of entries to search and entries to arrest are merely ones of degree rather than kind. The two intrusions share this fundamental characteristic: the breach of the entrance to an individual's home. The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their . . . houses . . . shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman* v. *United States*, 365 U. S. 505, 511. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line

at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

445 U.S. at 589-90. Clearly, the emphasis is upon the breach of privacy entailed in entering an individual's home.

In *Payton* the Court considered a police entry into the defendant's home for the purpose of arresting him. They had neither an arrest warrant nor a search warrant, and no exigent circumstances were presented. The Court found this to be an unacceptable invasion of the sanctity of the defendant's home, stating that the defendant's "threshold may not reasonably be crossed without a warrant." 445 U.S. at 590.

In the case at bar the facts are distinctly different in that the Omaha police in fact had a warrant to enter the home. The search warrant, which was not challenged and is presumably valid (see, *State v. Stickelman*, 207 Neb. 429, 299 N.W.2d 520 (1980); *State v. Bartlett*, 199 Neb. 471, 259 N.W.2d 917 (1977)), entitled the police to search the house for instrumentalities and fruits of the Malstead homicide. Thus, the police lawfully crossed the defendant's threshold, and the concerns of the *Payton* court have been met.

Several jurisdictions have considered this question and have stated that an arrest in the home during the execution of a valid search warrant is legal if based on probable cause. In *People v. Kite*, 97 Ill. App. 3d 817, 423 N.E.2d 524 (1981), an Illinois appellate court reviewed a situation where the police executed a valid search of the defendant's home and, upon entering the premises, found the defendant sleeping and arrested him. The appellate court evaluated the facts in light of the decision in *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).

It is apparent that the [*Payton*] court emphasized that a warrantless entry was unreasonable. In the case at bar, the police entered [the defendant's] residence with a search warrant which affords the same justification for their entry into his residence as would an arrest warrant. (*Payton v. New York*.) [The defendant] was found in the house after a lawful entry. The officers had probable cause to believe that [he] had committed a felony . . .

consequently, his arrest was lawful . . . . We therefore conclude that the trial court erred in finding that [the defendant's] arrest without an arrest warrant was not a lawful arrest. The police had a right to enter [his] residence; and once lawfully inside, they had a right to arrest him.

97 Ill. App. at 827, 423 N.E.2d at 531.

A California appellate court made a similar finding in *People v. McCarter*, 117 Cal. App. 3d 894, 173 Cal. Rptr. 188 (1981). The court stated: "Given probable cause to arrest . . . an officer may make an arrest outside the home without judicial authorization. If officers have authorization to enter the home, an arrest inside is of no greater constitutional significance than an arrest elsewhere." *Id*. at 908, 173 Cal. Rptr. at 196.

Also, the Supreme Court of Minnesota has noted, in dicta, that the *Payton* rationale is inapplicable to an arrest made during the execution of a valid search warrant of a residence. See *State v. Galde*, 306 N.W.2d 141 (Minn. 1981). Consequently, the first prong of the appellant's argument is without merit.

The second prong of the argument is that the police did not have probable cause to arrest Ware.

In Nebraska, the test of probable cause for a warrantless arrest is whether, at the moment of arrest, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was commiting [sic] an offense.

*State v. Tipton*, 206 Neb. 731, 734-35, 294 N.W.2d 869, 872 (1980). See, also, *State v. Harrison*, 218 Neb. 532, 357 N.W.2d 201 (1984); Neb. Rev. Stat. § 29-404.02 (Reissue 1979).

In the case at bar the police knew that the defendant had possession of the victim's car on the evening of the murder. They also knew that Ware had traded in two new guitars, sold only at the victim's store, shortly after the murder took place. Thus, the defendant was directly linked to the scene of the crime on the day of the crime. *Tipton* requires that the information be reasonably trustworthy and such that a prudent person would

believe that the individual had committed a crime. The information within the officers' knowledge was sufficient to create such a belief; consequently, probable cause existed to arrest Ware.

The second assignment of error concerns searches of the defendant's part-time residence at Boys Town, conducted by his family teachers. The first search, as previously related, resulted in the finding of a suicide note. A second search made later that day, December 21, after the police had gone, uncovered the keys to the victim's car. These keys were given to the Omaha police the following day, and the police used them to open the trunk of the victim's car. Found inside the trunk were several guitars, traced to Malstead Music Center and Brown's Music Store, and the victim's billfold.

Although these items apparently were not introduced in evidence, certainly there was testimony concerning them which would tend to link the defendant with the murder. In any event, the defendant claims that these items are the fruits of an illegal, warrantless search.

It is clear that the fourth amendment prohibition against unreasonable searches and seizures is inapplicable to the conduct of private parties. *Burdeau v. McDowell*, 256 U.S. 465, 41 S. Ct. 574, 65 L. Ed. 1048 (1921). See, also, *State v. Skonberg*, 194 Neb. 550, 233 N.W.2d 919 (1975); *State v. Gundlach*, 192 Neb. 692, 224 N.W.2d 167 (1974).

The appellant contends that the family teachers were acting on behalf of the police, as their agents, and consequently they were not acting as private parties. This is asserted by the defendant without any reference to the record. The appellee's brief references the testimony of one of the police officers involved, given at the suppression hearing:

> He [a family teacher] asked us about the [defendant's] room, and we were talking that maybe we should get a search warrant for the room, his room where he was staying along with two other boys. And they stated, well, that it was their policy to search rooms when boys were in trouble, and we told them if they wanted to and it was their policy, they could. So they did.

The defendant never disputed, and thus it is uncontested,

that a policy existed for family teachers, who are Boys Town employees, to search the rooms of the residents. It is also undisputed that the family teacher *offered* to search the room and was not asked.

In *Gundlach, supra,* this court addressed an analogous situation. A manager for Omaha Airplane Supply had information that goods stolen from the company were being stored in a garage. He contacted the police, who informed him they would not act without a criminal complaint. They suggested he check his inventory to ascertain if property was missing, and indicated that he should contact them if he found something. The manager went to the garage, which was opened for him by the landlady, and found stock items. He reported his findings to the police and stated that he did not know definitely if his company was short on inventory. The police subsequently obtained a search warrant and found stolen items, some belonging to Omaha Airplane Supply. This court held there was no violation of the defendant's fourth amendment rights as "there was no police participation or direction in [the] search." 192 Neb. at 695, 224 N.W.2d at 170. The court stated:

> Unless a private citizen in making a search is acting as an agent for the police, his acts may not be attributed to them. [The manager] was acting in the interests of his employer and not under the direction of the police. At no time prior to the search pursuant to a valid warrant did any police officer enter the garage. The facts do not constitute an agency or representative situation as urged by the defendant.

192 Neb. at 695-96, 224 N.W.2d at 170.

In the defendant's case there is nothing to indicate that the police participated in or directed the actions of the family teachers. To the contrary, it was the Boys Town employees who asserted their responsibility and willingness to search Ware's room. The uncontroverted testimony is that the teachers instigated and carried out the searches, and the only police response was that "if they wanted to and it was their policy, they could."

In light of these facts there was no agency relationship created by the police. Therefore, the searches of the defendant's

residence in Boys Town were conducted by private individuals not subject to the warrant requirement embodied in the fourth amendment.

The defendant's assignments of error are without merit, and the judgment of the district court is affirmed.

AFFIRMED.