STATE OF NEBRASKA, APPELLEE, v. KEITH ALLEN RUSS, APPELLANT.

226 N. W. 2d 775

Filed March 13, 1975. No. 39669.

Keith Allen Russ, pro se.

Paul L. Douglas, Attorney General, and Harold S. Salter, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

This is a post conviction proceeding under the provisions of section 29-3001, R. S. Supp., 1974. The defendant had been found guilty by a jury of murder in the first degree and was sentenced to life imprisonment. He appealed. We affirmed the judgment. State v. Russ, 191 Neb. 300, 214 N. W. 2d 924.

The motion to vacate the sentence alleges as grounds

for relief that: "Omaha police officers first entered into a premeditated criminal conspiracy which resulted in a prejudiced, warrantless, illegal arrest of KEITH A. RUSS, which subjected him to a . . . violation of his civil rights under the color of police authority; . . . arresting officers forcefully and at gunpoint entered the home of Miss Jayne Terry and proceeded to subject the Defendant to a . . . warrantless, illegal, unlawful arrest." The District Court denied an evidentiary hearing on the motion. Defendant appeals. We affirm.

A review under the Post Conviction Act is provided for where it is alleged that there has been a "denial or infringement of the rights of the prisoner as to render the judgment void or voidable" under the state or federal Constitutions. The act provides: "Unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief," it shall grant an evidentiary hearing and make findings of fact and determinations of law. § 29-3001, R. S. Supp., 1974.

In construing this act we have held that although the petition or motion to vacate the judgment need not be in any particular form, it must plead facts which, if true, would entitle the prisoner to the relief requested. The pleading of mere conclusions of fact or of law are insufficient. State v. Johnson, 189 Neb. 824, 205 N. W. 2d 548; Harris v. Sigler, 185 Neb. 483, 176 N. W. 2d 733; State v. Erving, 180 Neb. 680, 144 N. W. 2d 424; State v. Losieau, 180 Neb. 671, 144 N. W. 2d 406.

The allegations that the Omaha police officers entered into a conspiracy to illegally arrest the defendant are mere conclusions and under the above holding were not sufficient to require a hearing. Also insufficient is the conclusion that defendant was subjected to a violation of his civil rights under color of police authority. In the quoted portion of the motion above set forth, only two allegations of fact are made: (1) That the officers forcibly entered the home of. Miss Jayne Terry,

and (2) that they there arrested the defendant without a warrant.

For reasons which we set forth at the end of this opinion, the defendant was not entitled to an evidentiary hearing on his motion. However, because the defendant appears pro se we examine the files and bill of exceptions to determine if they affirmatively show constitutional violations related to the two facts pled.

The mere allegation that the arrest was made without warrant without more does not state a constitutional violation; neither does the added fact that the arrest was made in the residence of a third party following forcible entry of that residence.

In Nebraska and most other states, there has long been applied the common law doctrine, now codified by statute, that a police officer may arrest without a warrant when it appears that a felony has been committed and there are reasonable grounds to believe that the person arrested is guilty of the offense. § 29-404.02, R. S. Supp., 1974; State v. O'Kelly, 175 Neb. 798, 124 N. W. 2d 211; 6 C. J. S., Arrest, § 6, p. 586.

Section 29-411, R. S. Supp., 1974, further provides: ". . . when authorized to make an arrest for a felony without a warrant, the officer may break open any outer or inner door or window of a dwelling house or other building, if, after notice of his office and purpose, he is refused admittance." The annotation at 23 Stan. L. Rev. 995, indicates that this common law rule is codified in 29 states and that up until the time of the preparation of the annotation no court had ever held the doctrine unconstitutional. See footnotes 5, 6, and 7, op. cit. Our research discloses no more recent authority.

It is, however, a condition of the application of the doctrine that the officer must have reasonable grounds to believe that the person he seeks is within. No search warrant is required in that circumstance. Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726; United States v. McKinney, 379 F. 2d 259; Fisher v.

Volz, 496 F. 2d 333 (civil rights action growing out of general search); United States v. Brown, 467 F. 2d 419.

In State v. O'Kelly, *supra,* we said: "The Supreme Court of the United States in a long line of decisions, the latest being Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726, has held that the lawfulness of arrest is to be determined by reference to state law insofar as it is not violative of the Constitution of the United States. In the Ker case, supra, it was said as follows: 'This Court, in cases under the Fourth Amendment, has long recognized that the lawfulness of arrest for federal offenses is to be determined by reference to state law insofar as it is not violative of the Federal Constitution. Miller v. United States, supra; United States v. Di Re, 332 U. S. 581 (1948); Johnson v. United States, 333 U. S. 10, 15, n. 5 (1948). A fortiori, the lawfulness of these arrests by state officers for state offenses is to be determined by California law.' Turning now to the standard set out in our statute and case law that there must be '* * * reasonable ground to believe the person arrested is guilty of such offense,' it is clear that this is also the same standard of the Fourth Amendment to the United States Constitution protecting persons against unreasonable seizures. Henry v. United States, 361 U. S. 98, 80 S. Ct. 168, 4 L. Ed. 2d 134. That the standards are the same is conceded by the defendant.

"The applicable rule in applying these standards to a particular case is stated in the latest pronouncement of the Supreme Court of the United States in Ker v. California, supra, wherein it is stated: '* * * "there is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." Ibid.; see United States v. Rabinowitz, 339 U. S. 56, 63 (1950); Rios v. United States, 364 U. S. 253, 255 (1960). * * * This Court's long-established recognition that standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application is carried forward when that Amendment's proscriptions

are enforced against the States through the Fourteenth Amendment. And, although the standard of reasonableness is the same under the Fourth and Fourteenth Amendments, the demands of our federal system compel us to distinguish between evidence held inadmissible because of our supervisory powers over federal courts and that held inadmissible because prohibited by the United States Constitution. We reiterate that the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the "fundamental criteria" laid down by the Fourth Amendment and in opinions of this Court applying that Amendment. Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees. * * * The lawfulness of the arrest without warrant, in turn, must be based upon probable cause, which exists "where 'the facts and circumstances within their (the officer's) knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense had been or is being committed." Brinegar v. United States, 338 U. S. 160, 175-176 (1949), quoting from Carroll v. United States, 267 U. S. 132, 162 (1925) * * *.' "

We now examine the record of the original proceedings to determine whether it affimatively discloses a constitutional violation making the judgment void or voidable. The record establishes that prior to entry of the Terry home, the officers knew that the victim, Johnson, had been murdered by stabbing during the course of a burglary of his home. The connection of the defendant with the crime had been established by information from one Willie Nevels to whom the defendant had admitted his participation and whom the defendant had taken to the murder scene while the victim's body still lay there before the discovery of the crime. The defendant had at that time disclosed to

Nevels that the victim was not at home when the burglary commenced and that the defendant and a companion armed themselves with knives awaiting Johnson's return so they might rob his person. The defendant told Nevels that even before Johnson's return home they had considered that it might be necessary to kill him.

Nevels had been arrested on another charge and the information had been obtained from him as a result of his interrogation by the police concerning the Johnson murder. Nevels' automobile had been reported near the scene prior to the discovery of the crime but after its commission. This observation having been made when Nevels went to the scene with the defendant. The information the officers had from their investigation corroborated Nevels' story.

All the above established without any doubt the murder of Johnson and strong probable cause to believe the defendant was guilty.

The officers, after receiving the information from Nevels, induced Nevels to make a telephone call to the Jayne Terry (defendant's sister) home and by this call it was ascertained the defendant was then in the home. Four officers then went to the Terry home. They identified themselves as police officers, requested admittance at the front door, and displayed their badges at the door's peephole. A female voice responded with abusive language and a refusal to admit them unless the police had a warrant. While this was occurring at the front door, two of the officers had gone to the rear door, saw it opened partly, and observed a person whom they testified was the defendant. The door was then slammed shut. One of the officers at the rear then reported to the officers at the front door what they had just observed. After a short delay the officers forced the front door open, entered, and admitted the other officers at the rear door. The defendant was found and arrested in an upstairs bathroom. The foregoing recital shows no violation of constitutional standards in the making of

the arrest. If we assume arguendo that the arrest of the defendant was unlawful, there is still a further hurdle before we could declare the judgment void or voidable. It would have to be shown that some fruit of that arrest resulted or aided in his conviction. No physical evidence of any kind was taken as a result of the arrest, nor was any such evidence offered or received.

Following his arrest the defendant made a tape recorded confession which was received in evidence. This confession was made after the defendant had listened to the tape recorded statement which Nevels had given to the police and in which he had informed them of all the facts concerning the defendant's involvement which we have previously outlined. Before trial, the defendant moved to suppress the confession because it was allegedly given involuntarily. A Miranda hearing was held and the court found beyond a reasonable doubt that the confession was voluntary, and that the defendant had intelligently and knowingly waived his rights in respect of self-incrimination.

At trial the defense before the jury was that the confession was involuntary. All the defendant's evidence was related to that issue. The jury was properly instructed with reference thereto.

The clear inference from the record is that all the facts concerning the arrest were known and available to the defendant and his counsel at the time of the suppression hearing and at trial. The inference again is unmistakable. They chose to rest their case for suppression of the confession on the ground of involuntariness rather than on a claim that it was the fruit of an unconstitutional arrest. That possible ground for suppression was not raised on the original appeal. The claim presented in the motion is but an alternate ground for suppression of the confession. Suppression of the confession was an issue raised in the trial court. In State v. LaPlante, 185 Neb. 816, 179 N. W. 2d 110, we held: "A motion to vacate a judgment and sentence

under the Post Conviction Act cannot be used as a substitute for an appeal or to secure a further review of issues already litigated."

In State v. Losieau, 182 Neb. 367, 154 N. W. 2d 762, in a situation comparable to that which we have before us, we said. "The unlawful search and seizure issue was not raised on the appeal. Under the comparable federal statute, it has been almost universally held that ordinarily an alleged illegal search and seizure issue may not be successfully raised in a proceeding which constitutes a collateral attack on the sentence, but must be presented in the appeal from the conviction. In Cox v. United States, 351 F. 2d 280 (8th Cir.) 1965, the court affirmed dismissal of a motion to vacate without an evidentiary hearing and stated: 'Likewise, the illegal search and seizure issue cannot be considered on a § 2255 motion where, as here, the circumstances of the search and seizure were fully known to the defendant at the time of his trial resulting in his conviction.' See, also, Springer v. United States, 340 F. 2d 950 (8th Cir.) 1965. . . .

"We hold that an illegal search and seizure issue cannot be considered in a post conviction review where the circumstances of the search and seizure were fully known to the defendant at the time of the trial resulting in his conviction." The same principle is applicable here where the claim is an unlawful arrest or seizure of the person.

The trial court was correct in denying an evidentiary hearing because: (1) The motion does not allege facts which show a violation of constitutional rights which makes the judgment void or voidable; (2) the alleged illegal arrest issue need not be considered because the facts and circumstances were fully known to the defendant at the time of trial and were not raised there or on direct appeal; (3) suppression of the confession was an issue determined at the trial level and defendant failed to raise an additional possible ground for sup-

pression even though all the facts on which it might have been based were known to him; and (4) despite the insufficiency of the pleading we have examined the record of the suppression hearing and the trial to determine if it discloses constitutional violation making the judgment void or voidable and we find none.

AFFIRMED.