STATE OF NEBRASKA, APPELLEE, v. STEVE SCHLOTHAUER, APPELLANT.

294 N. W. 2d 382

Filed July 8, 1980. No. 43187.

James T. Hansen and Douglas Warner, for appellant.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

The defendant, Steve Schlothauer, was sentenced to 3 to 5 years less 83 days for the time he spent in the Scotts Bluff County jail following a conviction of escape from custody. He has appealed to this court assigning errors pertaining to the lawfulness of his arrest, the sufficiency of evidence, the refusal of the court to excuse a prospective juror for cause, the instructions given to the jury, and the sentence given to the defendant. We consider only the first assignment of error since it is dispositive of the case.

The evidence shows that on August 28, 1979, at 8 p.m., Gary Renner and James Robinson, criminal investigators with the Nebraska State Patrol, and Richard Yeager, a detective from the Scotts Bluff County sheriff's office, went to arrest the defendant at his residence in Gering, Nebraska. The officers maintained they had reasonable cause to believe the defendant had committed the crimes of sexual assault with penetration and abduction with intent to commit a felony. No arrest warrant was obtained by the officers. Two of the three officers went to the front door of the residence and knocked. The third waited at a side door. The defendant answered the door and Investigator Robinson told him he was under arrest for sexual assault and kidnapping. All

three officers then went into the house. The defendant was permitted to go into the basement of his residence to change clothes. Robinson and Yeager accompanied him to the basement and Renner remained upstairs. After dressing and while walking up the basement stairway, the defendant grabbed a large brown dog, pushed the dog toward Yeager, who was behind him on the steps, and ran out a side door of the house. Schlothauer was apprehended and arrested in Greeley, Colorado, on August 31, 1979. A hearing was held, before trial, to determine what evidence of other crimes, wrongs, and acts committed by defendant should be admissible at trial. The court ruled the State would make a prima facie case by presenting evidence that defendant had been arrested for a felony and that probable cause for arrest or ultimate guilt or innocence regarding the felony were not at issue. The defendant moved to quash the arrest as being without a warrant and an unreasonable arrest. The State characterized the motion as one to suppress evidence. The court overruled the motion to quash the arrest. The court found, as a matter of law, that probable cause existed for the arrest.

Defendant was charged with the crimes of sexual assault with penetration, abduction with intent to commit a felony, felon in possession of a firearm, and unlawful removal of himself from official detention after being placed under arrest on a charge of a felony. Count III was dismissed on the motion of the defendant. Counts I and II were dismissed with prejudice prior to trial on the motion of the State. Defendant was tried only on Count IV, i.e., removing himself from official detention after being placed under arrest on a charge of a felony.

The threshold question is whether police officers can enter a private residence without a warrant to make a routine felony arrest. Since defendant has appealed, the United States Supreme Court has ad-

dressed the issue of the constitutionality of warrantless felony arrests within one's residence. *Payton v. New York, Riddick v. New York,* 445 U.S. 573 (1980). In each of those cases, police officers, acting with probable cause but without warrants, had gone to the defendant's residence to arrest the defendant on a felony charge and had entered the premises without the consent of any occupant. The court held that the fourth amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest absent exigent circumstances. The language of the fourth amendment applies equally to seizures of persons and seizures of property. Indeed, as noted in *United States v. Watson,* 423 U.S. 411 (1976), the arrest of a person is "quintessentially a seizure." *Id.* at 428 (Powell, J., concurring).

In the case at bar, the defendant was charged with escape under Neb. Rev. Stat. § 28-912(1) (Reissue 1979). The statute provides: "A person commits escape if he unlawfully removes himself from official detention . . . following temporary leave granted for a specific purpose or limited period. Official detention shall mean arrest . . . ."

In *State v. Dickson,* 205 Neb. 476, 288 N.W.2d 48 (1980), we said that legal custody is an essential element of the crime of escape from legal custody of a law enforcement officer under Neb. Rev. Stat. § 28-736, (Reissue 1975). Neb. Rev. Stat. § 28-912 (Reissue 1979), replaced § 28-736. A person commits escape if he unlawfully removes himself from official detention.

The primary question presented is whether the defendant was lawfully arrested at the time of his escape. It is not a crime to depart from custody for which there is no authority. 30A C.J.S. *Escape* § 5 (1965); Annot., 70 A.L.R. 2d 1430, 1440 (1960); *People v. Tedesche,* 3 App. Div. 2d 220, 159 N.Y.S.2d 486

(1957); *People v. Paul*, 147 Cal. App. 2d 609, 305 P.2d 996 (1957). If there was no legal arrest, defendant was not in "official detention" within the meaning of the escape statute so that he could not be convicted of the crime of escape.

In overruling the motion to quash the arrest, the court found that probable cause existed for the arrest, under Neb. Rev. Stat. § 29-404.02 (Reissue 1979). That section provides: "A peace officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed: (1) A felony . . . ." Since the United States Supreme Court's decision in *Payton*, absent exigent circumstances, the police may not make a warrantless and nonconsensual entry into a suspect's home in order to make a felony arrest, regardless of the officer's reasonable belief. The record indicates the defendant was told he was under arrest when he answered the door. One officer testified he did not hear the conversation when the defendant came to the door, but it is undisputed that the defendant was not free to go. The circumstances appear to be within the perimeters of *Payton*. "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton* at 590.

Absent exigent circumstances, the arrest is unlawful and the defendant must be discharged and the information dismissed; but while it is clear the officers did not have an arrest warrant when they went to the defendant's residence, it is not clear whether exigent circumstances existed which would have justified the warrantless entry into the home for the purpose of an arrest. The trial court ruled that the lawfulness of the arrest was a question of law, not to be submitted to the jury. The State was foreclosed

from presenting evidence as to whether exigent circumstances existed by the trial court's ruling that exigent circumstances were immaterial to the lawfulness of the arrest. We do not determine whether probable cause and "exigent circumstances" existed so as to justify a warrantless entry into defendant's home for the purpose of arrest. In an escape offense where the existence of lawful custody is an essential element of the crime, those questions are to be decided by the jury on proper instructions by the trial court.

The case must be reversed and remanded for a new trial.

REVERSED AND REMANDED WITH DIRECTIONS FOR A NEW TRIAL.

CLINTON, J., concurring in the result.

I concur in the result only. A new trial is required because the court should have submitted to the jury, under proper instructions as to the law, the question of whether or not the defendant was in "legal custody" at the time of the "escape." It is not for the trial court to make any factual determination of the elements of the crime. In this case, one of the elements is the requirement that the defendant be in legal custody. That is for the jury in every case after they have been properly instructed on the law.

I agree with the principles of law as stated in the syllabi of the majority opinion. However, as applied to the evidence in this case, I believe that the majority has carried the principles of *Payton v. New York, Riddick v. New York*, 100 S. Ct. 1371 (1980), beyond their proper application.

As indicated in the majority opinion, the officers did not make a physical entry into the home to make the arrest. They rapped on the door. The defendant responded and opened the door. The officers then, after identifying themselves, told the defendant that he was under arrest and described the charge. No physical intrusion was made into the

home up to that time. After this, the defendant asked to be allowed to change his clothes and invited the officers into the home. Officer Robinson's testimony was: "He invited us into the home." At this point, the evidence would support the conclusion that he had submitted to the arrest. He might have closed the door and refused to submit. The officers could not then have entered without a warrant.

*Payton* says that the chief evil against which the fourth amendment is directed is the unconsented to physical entry of the home. Absent exigent circumstances, "that threshold may not reasonably be crossed without a warrant." *Payton* at 1382. Nothing said in *Payton* prohibits an officer from notifying a person who responds to a rap on the door that he is under arrest. If the person submits and either comes out or invites the officers in, then there has been no intrusion barred by the fourth amendment. *Payton* does not, even by inference, prohibit an entry by consent after the officers have identified themselves and announced their purpose. There is nothing in *Payton* which prohibits the person from surrendering at his doorway.