STATE OF NEBRASKA, APPELLEE, v. JOYCE L. TIPTON,
APPELLANT.

294 N. W. 2d 869

Filed July 15, 1980. Nos. 42948, 42949, 42950, and 42951.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Sharon M. Lindgren, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

Defendant, Joyce L. Tipton, was prosecuted on three counts of first degree sexual assault, one count of attempted sexual assault, four counts of use of a knife in commission of a felony, and one count of robbery. The defendant waived his right to a jury trial and was found guilty on all counts charged. The defendant was sentenced to a term of 15 to 20 years on each of the first degree sexual assaults and 5 to 10 years on the attempted sexual assault, to run concurrently. In addition, he was sentenced to terms of 5 to 10 years on each of four charges of use of a knife in commission of a felony and a term of 15

to 20 years on the charge of robbery. Those sentences are to be served consecutively to each other and to the 15 to 20 year sentences imposed for first degree sexual assault. The defendant was further found to be a treatable mentally disordered sex offender and ordered to be confined in the Lincoln Regional Center. The cases were consolidated for appeal. We affirm.

Tipton appeals to this court, assigning as error that there was no probable cause for his warrantless arrest and that any identification testimony or statements of the defendant should have been suppressed as the fruit of an unconstitutional arrest. Defendant also contends that the sentence imposed by the District Court was excessive.

On March 29, 1979, Sgt. Dennis Howard of the Omaha police department questioned Joyce L. Tipton at the Walking Cane Tavern about several sexual assaults. Officer Howard was investigating a number of sexual assaults in the Park Avenue area, and an informant pointed out the defendant. Officer Howard told Tipton he wanted to talk to him since he matched the description of a suspect that had committed four rapes. Tipton answered that he had already been interviewed by Officer Joe Nepodal and cleared and that he was on parole for sexual assault. Returning to the police station, Officer Howard checked with Officer Nepodal about his interview with Tipton. Nepodal told Howard that he did not interview Tipton about the sexual assaults; that their discussion concerned a robbery case Nepodal was investigating. Howard's supervisor, Lt. Robert K. Olson, reviewed the records of the defendant's previous conviction and found that there were a number of similarities between the 1976 sexual assault and the assaults investigated in 1979. All of the assaults had occurred in the same geographical area and it appeared the crimes had the same modus operandi. The victim's physical description

of the suspect in the 1976 case matched the physical descriptions of the suspect in the later cases. In all the assaults, the suspect wore a mask, either a ski mask or a nylon stocking. A knife was used in all 1976 and 1979 assaults.

Based on the initial street stop and the information concerning the defendant's previous sexual assault conviction, three police officers and Tipton's parole officer went to his apartment with the intention of arresting him. The officers made no attempt to get an arrest warrant before the arrest. The officers discovered the defendant had moved but the parole officer knew his new address. The officers went to the apartment they believed belonged to the defendant, knocked on the door, and no one answered. While they were standing in the hall, the defendant and a female companion were observed coming back to the apartment. While in the hallway, the officers advised the defendant who they were and that they wanted to talk to him at the police station about recent sexual assaults in that area. Tipton agreed to accompany the officers to the station and talk to them and consented to a search of his premises at that time. The defendant was brought to the police station and interrogated. Between periods of interrogation, a lineup was held. The defendant was identified by one of the victims by sight and later by voice. The defendant later admitted to the commission of three of the sexual assaults.

At trial, the state produced the victims of the several sexual assaults. The first victim identified the defendant as the assailant. The second victim was not able to positively identify the defendant as the assailant; the third and fourth victims identified the defendant as the assailant. The taped statement of the defendant, in which he confessed to three of the crimes charged, was received in evidence. The defendant, after the taped confession, admitted to the interrogating officer the fourth assault, having

first denied it because of his reluctance to admit that the victim was praying as he assaulted her.

The first issue before this court is whether probable cause existed to arrest Tipton. If not, then evidence as fruit of the unlawful arrest must be suppressed.

Nebraska statutes do not distinguish between warrantless arrests on the basis of where the arrest took place, but they provide that an officer may arrest without a warrant when it appears that a felony has been committed and there are reasonable grounds to believe that the person arrested is guilty of the offense. Neb. Rev. Stat. § 29-404.02 (Reissue 1979). The Supreme Court of the United States held that, absent exigent circumstances, a warrantless felony arrest within one's residence violated the fourth amendment. *Payton v. New York*, 100 S. Ct. 1371 (1980). Since the statute does not explicitly prohibit a warrantless arrest for a felony within the suspect's home, this provision must be implicitly incorporated into the statute. However, this is not a case where the police made a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. See *State v. Schlothauer, ante* p. 670, 294 N.W.2d 382 (1980). In the case at bar, the defendant was arrested outside his apartment. The United States Supreme Court has held valid a warrantless arrest made in a public place, establishing that a personal seizure alone does not require a warrant if probable cause exists. *United States v. Watson*, 423 U.S. 411 (1976). The Supreme Court emphasized that the necessary inquiry was not whether the officers had time to obtain a warrant, but only whether there was probable cause for the arrest. The court there held that the power to make such a warrantless arrest in a public place is not dependent upon proof of any exigent circumstances which made it impracticable to obtain a warrant.

In Nebraska, the test of probable cause for a war-

rantless arrest is whether, at the moment of arrest, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was commiting an offense. *State v. Russ,* 193 Neb. 308, 226 N.W.2d 775 (1975). The officers knew that four sexual assaults had been committed and that the defendant was on parole for sexual assault. The defendant matched the general descriptions provided by the victims. At the first interview, the defendant lied to the officer and claimed that he had previously been checked and cleared by Officer Nepodal. The lie was decisive. Lieutenant Olson testified: "It was important in the sense that it [a robbery] happened just after the suspect had fled on the 36th and Jackson sexual assault, and of course, thinking like a policeman the possibility was in my head that this was a cover-up report." When Lieutenant Olson reviewed the records of the defendant's previous conviction, he found that there were a number of similarities between the incident and the crimes under investigation such as the suspect's description, clothing, and knife. On this information, Olson ordered that the defendant be arrested. "It is not only the personal knowledge of the officer who makes the search and seizure which may be used to test probable cause, but added thereto may be the collective knowledge of the law enforcement agency for which the officer acts." *State v. Anderson,* 204 Neb. 186, 195, 281 N.W.2d 743, 748 (1979). The facts and circumstances known to the officers at the time of arrest were clearly sufficient to constitute probable cause justifying the arrest. See *State v. Irwin,* 191 Neb. 169, 214 N.W.2d 595 (1974). Since there was probable cause to arrest the defendant, the motions to suppress the confession and lineup identification were properly overruled.

The defendant next contends that his confession

must be suppressed because it was obtained as a result of an unreasonable detention. Defendant claims that there was an unreasonable delay in bringing him before a magistrate, that he was unreasonably detained by the police, and that the interrogation should have ceased after the lineup when one of the victims identified him as the person who had assaulted her.

The continued detention following the lineup was justified and, since the identification that resulted from the lineup involved only one case, it was prudent that the police continue their investigation to determine the defendant's involvement in the remaining assault cases. The defendant does not contend that his statements were involuntary, nor that he asserted his right to remain silent. The length of the interrogation was not unreasonable nor inherently coercive. Prior to giving the taped confession, the defendant was interrogated three times for a total of 4 hours. The assignment is without merit.

The defendant argues that the in-court identification and the testimony of the witnesses must be suppressed as fruit of his illegal arrest. It is not suggested that the police lineup was impermissibly suggestive, nor that the witnesses lacked an independent basis for an in-court identification. Defendant contends that identification and testimony of witnesses were an exploitation of his illegal arrest. Since we have concluded that the police had probable cause to arrest the defendant, the defendant's contentions are clearly without merit.

Finally, the defendant contends his sentence was excessive. It is well established that where a sentence is within the statutory perimeters, it will not be disturbed absent an abuse of discretion by the trial court. *State v. Davis*, 200 Neb. 557, 264 N.W.2d 198 (1978). No abuse of discretion appears here.

We affirm the judgment of the trial court.

AFFIRMED.