STATE OF NEBRASKA, APPELLEE, V.
LLOYD T. SMITH, APPELLANT.

298 N.W.2d 162

Filed October 31, 1980.  No. 43237.

David T. Schroeder for appellant.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

The appellant, Lloyd T. Smith, appeals from a conviction finding him guilty of five counts of possession of a controlled substance. As a result of the conviction, Smith was sentenced to not less than 20 months nor more than 2 1/2 years on each count, with said sentences to run concurrently. Smith maintains that, because his arrest was illegal and in violation of his rights under the fourth amendment to the United States Constitution, evidence thereafter obtained as a result of a search of his premises made pursuant to an otherwise valid search warrant should have been suppressed, thereby making the conviction impossible. We believe that the appellant has misconstrued the law in this regard and, therefore, we affirm the judgment of the trial court.

The evidence discloses that on February 12, 1979, Lt. Gary W. Hansel, who is a drug investigator for the Nebraska State Patrol, was advised by a Mr. Jack Dunn, a supervisor at United Parcel Service, Omaha, Nebraska, that he, Mr. Dunn, had received information from his Kansas City office that United Parcel Service in Kansas City had a package in their possession which they believed to contain a controlled substance

and which was addressed to the appellant at his residence, Apt. 101, 714 E. Philip Ave., North Platte, Lincoln County, Nebraska. Mr. Dunn further stated to Lt. Hansel that the tape on the package had come loose, revealing the contents. These contents were viewed and inspected by Ronald Miller, who is a police officer and part-time employee of United Parcel Service.

On February 14, 1979, Lt. Hansel spoke personally with Officer Miller. Officer Miller had been employed as a police officer for the police department of Kansas City, Kansas, for 6 years. He had worked as a patrolman for approximately 5 of those years, working regular operations with the traffic bureau. For the year just past, however, he had spent about 70 percent of his time working as an administrative assistant to the operations bureau ·commander and approximately 30 percent of his time had been committed to regular police duties for the operations bureau. Officer Miller's experience with controlled substances had been those experiences that normally occur to a traffic officer. Furthermore, he had had previous experience with the identification of marijuana, phenocyclidine (PCP), and cocaine and was familiar with the general appearance of controlled substances and the general methods of packaging them.

Officer Miller advised Lt. Hansel that on February 12, 1979, his attention was called to a broken package which had been removed from the sorting process for repair by United Parcel Service. Inside the box, Officer Miller observed two zip-lock plastic bags, one within the other. Inside the inner bag he observed three small glass test tubes which contained a dark brown residue and a brown substance. Also inside the inner bag, he observed a foil packet containing two or three pieces of a brown chocolate-colored substance together with three or four chunks of a brown fibrous material. Upon further inspection and smelling, it was Officer

Miller's opinion that all of the brown substances were marijuana in the form of hashish. Inside the inner plastic bag, Officer Miller found two pieces of folded note paper, each containing what appeared to be a little less than a teaspoonful of a white powder. Officer Miller was of the opinion that the color and outward appearance of the white powder was consistent with cocaine he had previously seen and identified. The contents were thereafter returned to the package and the package was resealed. The package was first shipped to the office of the United Parcel Service at Omaha, Nebraska, and was then shipped to the office of the United Parcel Service at North Platte, Nebraska.

As a result of this information, Lt. Hansel prepared an affidavit containing all the facts recited above, together with other information identifying and establishing the fact that Lloyd Smith did, indeed, reside at 714 E. Philip Ave., North Platte, Nebraska.

At the time of the delivery by United Parcel Service to the Smith residence, and shortly thereafter, the apartment occupied by Smith was under surveillance by Lt. Hansel and Detective Bill Traub of the North Platte police department, as well as Inspector James N. Avary of the Nebraska State Patrol. The apartment building itself contained 12 separate units reached through a central vestibule.

After the delivery of the package by United Parcel Service to the Smith apartment, Lt. Hansel contacted Inspector David A. Elliott of the Nebraska State Patrol and told him that the package was delivered to Smith's apartment and requested that Inspector Elliott contact the county attorney's office and advise that the package had been delivered and signed for and that he was maintaining surveillance. While Lt. Hansel and the other officer maintained the surveillance, the county attorney's office sought and obtained the search warrant based upon the affidavit previously prepared by Lt. Hansel.

While the apartment was under surveillance and before the arrival of the search warrant, a vehicle arrived bearing license plates from an adjoining county. The officers became concerned that the vehicle may have arrived for the purpose of obtaining the controlled substance and, therefore, they decided to secure the Smith apartment unit before the warrant arrived. One of the officers knocked upon the door and identified himself as a police officer. The voice inside instructed them to wait "[j]ust a minute." Lt. Hansel advised the occupant to "[o]pen the door or I will kick it in." The voice from the door said, "Just a minute." Lt. Hansel then kicked the door open. The appellant was about 8 feet inside the door. They approached him and Lt. Hansel identified himself while the other officer made a cursory search of the apartment to make sure no one else was in it. No other search was made of the apartment and no property was seized at that time. Lt. Hansel did, however, advise the appellant that a search warrant for the apartment had been requested and that they were going to simply wait until the search warrant arrived. Lt. Hansel then went to the telephone and called the county attorney's office. He was advised that the search warrant already had been issued and that a deputy was on his way at that time.

After walking down the hall and looking to see if any other subjects were in the apartment, the other officer proceeded to stand by the front entry so that the appellant would be between him and Lt. Hansel at all times.

The warrant arrived approximately 10 or 15 minutes after the officers entered the apartment. The appellant and the premises were then searched for controlled substances; inventoried items were seized; and appellant was arrested and taken to jail.

Appellant maintains that, on the basis of the recent decision of the U.S. Supreme Court in the case of *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371,

63 L. Ed. 2d 639 (1980), the arrest was a violation of his fourth amendment constitutional rights and, therefore, the evidence obtained from the apartment should have been suppressed upon motion filed by appellant.

As we indicated earlier, we believe that the appellant misconstrues the holding in *Payton, supra. Payton* does, indeed, stand for the proposition that, absent exigent circumstances or consent, one may not be arrested inside his home without the police first obtaining an arrest warrant, and evidence obtained without a search warrant and as a part of the unlawful arrest must be suppressed upon proper motion. Such, however, are not the facts of this case. Even *Payton* recognizes that illegally arresting an accused does not preclude the government from subsequently trying the accused for the crime charged.

While we do not condone warrantless violent intrusions into one's residence and, as we said in *State v. Patterson*, 192 Neb. 308, 316, 220 N.W.2d 235, 240 (1974), "Search pursuant to warrant is to be much preferred to search without a warrant and ordinarily a warrant should be obtained," we do not believe that the evidence obtained in this case pursuant to a valid search warrant must be suppressed because the arrest may have been illegal. There is no dispute in the evidence that a valid warrant had been sought, obtained, and issued in this case. Had the police officers awaited the arrival of the warrant before attempting to enter the premises, there would be no question as to the admissibility of the evidence obtained. The issue, then, for us to decide in this case is whether, assuming for the sake of argument that the arrest was illegal because it was without warrant and there were not exigent circumstances (a fact which we do not decide), the evidence obtained by a valid warrant was so tainted by the illegal arrest as to be the fruit of the poisonous tree and, therefore, inadmissible.

In *Brown v. Illinois*, 422 U.S. 590, 95 S. Ct. 2254,

45 L. Ed. 2d 416 (1975), the U.S. Supreme Court made it clear that the mere fact that there is an illegal arrest does not thereby cause all evidence otherwise lawfully obtained to be inadmissible "per se." Further, in the case of *Costello v. United States*, 365 U.S. 265, 280, 81 S. Ct. 534, 5 L. Ed. 2d 551 (1961), the U.S. Supreme Court made it clear that, "[T]he 'fruit of the poisonous tree' doctrine excludes evidence obtained from or as a consequence of lawless official acts, not evidence obtained from an 'independent source.'" In the instant case, the controlled substance was obtained, not as a result of the arrest, but rather as a result of a search warrant previously obtained and properly issued. It was clearly obtained from an independent source. The officers found nothing in the premises after their entry which aided them in obtaining the search warrant, nor did they provide anyone with any information concerning their entry which resulted in their obtaining the search warrant. The search warrant had already been issued based upon independent sources and information and was, therefore, unrelated to the warrantless arrest. This important distinction is made clear by the language of the U.S. Supreme Court in the landmark decision of *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1962), wherein the Court pointed out, "Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed." In two recent decisions, the U.S. Supreme Court again reaffirmed the lesson of *Wong Sun, supra,* and declared that an illegal arrest of an accused, without more, does not bar the subsequent prosecution of the accused and the illegality of an accused's detention by police does not deprive the government of the opportunity to prove the accused's guilt through the introduction of evidence

wholly untainted by the police misconduct. See *United States v. Crews*, 445 U.S. 463, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980), and *Rawlings v. Kentucky*, _____ U.S. _____, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980). It is clear from the evidence in this case that the facts leading to the issuance of the search warrant and the subsequent seizure of the controlled substance were not, in any manner, connected with the police officers' warrantless entry into the premises but, rather, were a result of information provided by United Parcel Service. The evidence, having been obtained from an independent, lawful source, was properly admissible and the trial court did not err in refusing to suppress it. That being the only error raised by the appellant and having been so disposed of, we need proceed no further.

AFFIRMED.

CLINTON, J., not participating.