STATE OF NEBRASKA, APPELLEE, V.
STEVE SCHLOTHAUER, APPELLANT.

300 N.W.2d 194

Filed January 9, 1981. No. 43187.

James T. Hansen and Douglas Warner for appellant.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson for appellee.

PER CURIAM.

In their argument at rehearing, the State urged us to hold that the arrest was not illegal under *Payton v. New York, Riddick v. New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). In the first

opinion, *State v. Schlothauer*, 206 Neb. 670, 294 N.W.2d 382 (1980), we remanded for a determination of the existence of exigent circumstances. In the opinion of the majority of the court, we should also remand for a determination as to whether the arrest was consensual.

We do not initially make factual determinations. Such determinations are for the trial court. We cannot comply with the State's request. In the event that the evidence establishes either consent or exigent circumstances, the arrest was legal, and the escape, a criminal offense.

The court, though invited to do so, expressly does not pass on whether under *Payton, supra*, evidence of an escape from custody must be suppressed as the fruit of an illegal arrest, or whether under our statute, Neb. Rev. Stat. § 28-912 (Reissue 1979), an illegal arrest can be said to have been effected "in good faith under color of law."

The original opinion is confirmed with the modification set forth above.

REVERSED AND REMANDED.

BOSLAUGH, J., dissenting.

Upon reargument and reconsideration of this case, I am unable to join the opinion of the court because I believe it is in error in several respects.

The opinion assumes that the legality of the arrest was an issue in this case and relies upon *State v. Dickson*, 205 Neb. 476, 288 N.W.2d 48 (1980), in support of that premise. The opinion further relies upon *Payton v. New York, Riddick v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639, decided April 15, 1980, to establish that the arrest may have been illegal.

The *Payton* case has no application because the arrest in this case was made on August 28, 1979, more than 7 months before the *Payton* case was decided.

The *Dickson* case has no application because it involved an offense under Neb. Rev. Stat. § 28-736 (Re-

issue 1975) in which "legal custody" was an element of the offense.

This case is a prosecution under Neb. Rev. Stat. § 28-912 (Reissue 1979) in which legality of the custody, or arrest, is not an element of the offense. The statute provides: "(1) A person commits escape if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period. Official detention shall mean arrest, detention in or transportation to any facility for custody of persons under charge or conviction of crime or contempt or for persons alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but official detention does not include supervision of probation or parole or constraint incidental to release on bail.

"(2) A public servant concerned in detention commits an offense if he knowingly permits an escape. Any person who knowingly causes or facilitates an escape commits a Class IV felony.

"(3) Irregularity in bringing about or maintaining detention, or lack of jurisdiction of the committing or detaining authority shall not be a defense to prosecution under this section if the escape is from a prison or other custodial facility or from detention pursuant to commitment by official proceedings. In the case of other detentions, irregularity or lack of jurisdiction shall be a defense only if:

"(a) The escape involved no substantial risk of harm to the person or property of anyone other than the detainee; and

"(b) The detaining authority did not act in good faith under color of law.

"(4) Except as provided in subsection (5) of this section, escape is a Class IV felony.

"(5) Escape is a Class III felony where:

"(a) The detainee was under arrest for or detained on a felony charge or following conviction for the commission of an offense; or

"(b) The actor employs force, threat, deadly weapon, or other dangerous instrumentality to effect the escape; or

"(c) A public servant concerned in detention of persons convicted of crime purposely facilitates or permits an escape from a detention facility or from transportation thereto."

Since at least 1972 the use of force to resist an unlawful arrest has been prohibited. Neb. Rev. Stat. § 28-1409(2) (Reissue 1979) provides: "(2) The use of such force is not justifiable under this section to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful."

In *State v. Bear Runner*, 198 Neb. 368, 252 N.W.2d 638 (1977), a prosecution for an assault upon a police officer making an arrest, we held that the legality of the arrest and the existence of probable cause for the arrest was not an issue in the case. We said at 374-75, 252 N.W.2d at 642: "This brings us to the central issue in the case: Does a person have the right to use force to resist arrest? Defendant contends that the question of probable cause for arrest is material to a determination of this issue. This clearly is not the law. Section 28-836(2), R.R.S. 1943, provides: 'The use of such force is not justifiable under this section to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful.' This section is identical to section 3.04(2)(a)(i) of the Model Penal Code.

"In the comments to the Model Penal Code section, the drafters noted that while prior law may have allowed the use of force to avoid unlawful arrest, '* * * Legislative reconsideration of the issue should result in the conclusion that there ought not be a privilege to employ force against a public officer who, to the actor's knowledge, is attempting only to arrest him and subject him to the processes of law. It should be possible to provide adequate remedies against illegal arrest, without permitting the ar-

rested person to resort to force — a course of action highly likely to result in greater injury even to himself than the detention.'

"The comments continue: 'The paragraph, it should be noted, forbids the use of force for the purpose of preventing an arrest; it has no application when the actor apprehends bodily injury, as when the arresting officer unlawfully employs or threatens deadly force, unless the actor knows that he is in no peril greater than arrest if he submits to the assertion of authority.' Comments, Model Penal Code, Tent. Dr. No. 8, pp. 18, 19. Section 28-836, R.R.S. 1943, adequately covers these contingencies."

Section 28-912 adopts the same principle for escape. The theory of the new law is that a dispute involving the legality of an arrest should be resolved in the courtroom rather than by force and combat. As stated in *State v. Kyles*, 169 Conn. 438, 441-42, 363 A.2d 97, 98-99 (1975), in a case involving a similar statute: "Under our statutes, illegal confinement is no defense to escape or to assault on a correctional officer. This is clearly indicated by the change from prior statutes, in that the new legislation eliminated any prerequisite that a person be 'legally confined.' It must be presumed that when the legislature changed the language, it intended to change the meaning. [Citations omitted.] Furthermore, it must be presumed that the legislature was aware of prior judicial decisions following the common-law rule that it is lawful for a person to use force to resist an unlawful arrest as set forth in *State v. Amara* [citations omitted] or to escape from a confinement when the process under which he had been detained is invalid as enunciated in *State v. Leach* [citations omitted]."

Under § 28-912, irregularity or lack of jurisdiction is a *defense* to escape from some detention but only if the escape involved no substantial risk of harm to anyone other than the detainee *and* the detaining authority did not act in good faith under color of

law. The defendant offered no evidence in this case and there is no evidence upon which a finding could be based that the second element of the defense was satisfied.

The trial court ruled as a matter of law that there was probable cause for the arrest. This was not prejudicial because the legality of the arrest was not an issue.

The judgment should have been affirmed.

HASTINGS, J., joins in this dissent.