STATE OF NEBRASKA, APPELLEE, V.
JOSEPH S. GEORGE, JR., APPELLANT.

317 N.W.2d 76

Filed March 12, 1982.   No. 44063.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos for appellant.

Paul L. Douglas, Attorney General, and Bernard L. Packett for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

The appellant, Joseph S. George, Jr., appeals from a conviction based upon a jury verdict finding him guilty of first degree sexual assault of a person under the age of 16 years. The trial court sentenced George

to the Nebraska Penal and Correctional Complex for a term of not less than 14 years nor more than 20 years, said sentence to run consecutive to a current term being served.

The appellant assigns the following errors: (1) The trial court erred in failing to find that the appellant's arrest was effectuated without probable cause in violation of *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); (2) The trial court erred in failing to suppress certain statements made by the appellant to a police officer shortly after his arrest; (3) The court erred in failing to grant a motion for mistrial based on comments made by the prosecutor during opening statements; and (4) The court erred in concluding that *Payton v. New York, supra*, had no application to the appellant's case.

The evidence established that on August 6, 1979, the victim, a 10-year-old boy, while on his way to a friend's home approximately 2 blocks away, was approached by a man, later identified as the appellant, who asked him if he wanted to make some money packing glasses. The appellant offered the victim $20 to go to a vacant apartment. Once in the apartment, the victim was threatened with a knife. According to the victim's testimony, he was forced, at knifepoint, to engage in oral copulation with the appellant. The victim further testified that after engaging in oral copulation, the appellant forced him to lie face down on a bed and spread his legs, at which time the appellant attempted anal intercourse on the victim. The victim reported the assault to his mother who immediately called the police. The victim reported the assault to the police, gave a composite description of the suspect, showed the police the apartment in which the assault occurred, and was taken to Lincoln General Hospital for examination.

Approximately 1 week after the incident, Officer John Winkler of the Lincoln Police Department received information from a confidential informant

that the appellant was involved in the sexual assault. The confidential informant told Winkler "an individual came to his place of business and gave him the information about an acquaintance having some trouble in regards to sexually assaulting an individual. She described the individual and the individual that gave me the information stated that those particular parties come into his place of business and he was well aware of what had happened and with this information he called me." The officer further testified that while he did not personally know the informant, the informant knew the appellant's fiancee and she was the person who told the informant that appellant was responsible for the sexual assault. The informant also knew the victim and his mother.

With this information, Officer Winkler set up a photographic lineup consisting of the appellant's mug shot and three other mug shots. The victim positively identified George as the person who had assaulted him.

Without obtaining a warrant, Officer Winkler went to the apartment occupied by the appellant and his fiancee to effectuate an arrest. The officer testified that he went to the apartment with the specific intent of arresting the appellant. The officer further testified that George answered the door and he, the officer, informed George that he would have to come to police headquarters. The record does not clearly establish whether Officer Winkler entered the apartment. However, defense counsel asked: "I mean at least when you walked in and said he had to come to the station, he was not free to leave?" Officer Winkler replied: "Right, he couldn't leave." Officer Winkler never denied defense counsel's implication that he entered the apartment.

George was immediately conveyed to police headquarters, placed in an interrogation room, and shortly thereafter was read his *Miranda* warnings. George then gave Officer Winkler a statement, orally confirming the events of the assault as related by the

victim immediately after the assault. In the statement George stated that he did not remember if he had forced the victim to engage in oral copulation with him. In response to a question of whether he attempted anal intercourse with the victim, George stated he did not remember if he did this or not. At trial, appellant testified on his own behalf and denied that there was any penetration.

Appellant contends that his arrest was made without probable cause and therefore the statements obtained from him at police headquarters are inadmissible as the "fruit of the poisonous tree" and should have been excluded from evidence. See *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Appellant further contends that his warrantless arrest was illegal under *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), since it took place in his apartment and there was no showing of exigent circumstances or a consensual arrest.

*Payton* was decided subsequent to the trial and conviction but prior to appellant's sentencing and ruling on his motion for new trial. Throughout the proceedings, defense counsel asserted the inadmissibility of the statements. Defense counsel asserted that the statements were inadmissible since they were obtained in violation of the appellant's *Miranda* rights and further on the ground that the arrest was made without probable cause. The appellant testified that he had requested counsel and had been refused access to counsel.

We find no merit in appellant's contention that his arrest was made without probable cause. Nebraska statutes provide that an officer may arrest without a warrant when it appears that a felony has been committed and there are reasonable grounds to believe that the person arrested has committed the offense. Neb. Rev. Stat. § 29-404.02 (Reissue 1979). At the time of the arrest, the arresting officer had sufficient

information linking the appellant to the sexual assault. The officer had a description of the appellant from the victim, a description of the place where the assault took place, information from a medical examination which revealed some evidence of trauma to the victim's anus and the presence of secretions consistent with the appellant's blood type on the victim's underwear. In addition to this, the officer had reliable information from a confidential informant that the appellant had committed the sexual assault. The officer had a photograph of the appellant which was consistent with the descriptions given by the victim and the informant. Finally, the victim positively identified the appellant in a photographic lineup. Based on this information, Officer Winkler had probable cause to believe that a felony had been committed and that the appellant had committed the felony.

Appellant's contention that the photographic array was tainted because three of the four pictures contained men with long hair and beards while the appellant's hair is short and he has only a mustache is well taken. The array itself appears to be tainted; however, in looking at the totality of the circumstances, the victim had a good look at his assailant and gave an accurate description. The lineup was not prejudicial since the victim had an independent basis from which he made a positive identification. The more serious question arises, however, with respect to the actual arrest of the appellant at his apartment. Officer Winkler testified that he had no reason to believe that the appellant was about to leave town and gave no evidence that would justify the court to find that the circumstances were exigent. Officer Winkler was not permitted to answer the question, "Why did you not go and get an arrest warrant?"

In *State v. Smith*, 209 Neb. 505, 308 N.W.2d 820 (1981), we left open the question of whether *Payton* should be applied retroactively. While not expressly applying *Payton*, this court has, in several cases before

it, impliedly followed the *Payton* ruling. In *State v. Schlothauer*, 207 Neb. 663, 300 N.W.2d 194 (1981), a verdict was rendered prior to the *Payton* decision but the case was before this court when *Payton* was finally decided. This court remanded to determine whether or not there were exigent circumstances justifying the entry into the home and whether the subsequent arrest was consensual.

In *State v. Resler*, 209 Neb. 249, 306 N.W.2d 918 (1981), this court cited *Payton* as standing for the proposition that a police officer who has not obtained either an arrest or search warrant cannot make a nonconsensual and warrantless entry into a suspect's home in the absence of exigent circumstances. The court went on to adopt the "emergency doctrine" as an exigent circumstance authorizing a warrantless or nonconsensual entry into a suspect's home.

In *State v. Tipton*, 206 Neb. 731, 294 N.W.2d 869 (1980), this court distinguished *Payton* and concluded that an arrest made in a public place does not violate *Payton*.

In *State v. Smith*, 207 Neb. 263, 298 N.W.2d 162 (1980), the defendant maintained that, because his arrest was illegal and in violation of his rights under the fourth amendment to the U.S. Constitution, evidence thereafter obtained as a result of a search of his premises made pursuant to an otherwise valid search warrant should have been suppressed. In that case this court distinguished the situation in *Payton* and held that the search warrant was, in fact, in the process of being procured, and that it had a basis independent of any illegal arrests, therefore it is not barred under the *Payton* doctrine.

Finally, in the more recent case of *State v. Billups*, 209 Neb. 737, 311 N.W.2d 512 (1981), Billups was accused of robbing the Imperial Oil Co. on March 27, 1980. The *Payton* decision was released on April 15, 1980. In that case, Billups' sister-in-law was approached by officers outside her home. She went back up to the

house, knocked, and went in with the police following her. The police placed Billups under arrest and, while leaving, they noticed a jacket, believed to be the one used in the robbery, hanging in a hallway just inside the front door. Billups argued that his arrest violated the standards established by *Payton* since it was nonconsensual and without a warrant. He further argued that since his arrest was illegal, all evidence obtained as a result of the illegal arrest was inadmissible as the "fruits of the poisonous tree." This court stated: *"Appellant's position is correct unless the trial court properly found that the entry into the Billups home was consensual."* (Emphasis supplied.) *Id.* at 740, 311 N.W.2d at 514.

We have, in all cases which have come before us and were pending on direct appeal at the time the *Payton* decision was released, uniformly applied *Payton.*

In *Linkletter v. Walker,* 381 U.S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965), the U.S. Supreme Court was deciding whether the exclusionary principle enunciated in *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961), applied to state court convictions which had become final before rendition of its opinion. In defining "final," the Court said in n. 5 at 622: "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in *Mapp v. Ohio.*" In view of this, we believe that the appropriate rule is to limit any case involving a constitutional issue requiring suppression of evidence to those cases not finally decided. We therefore interpret the rule in *Payton* to be retroactive and the uniform decision of our cases to the extent it applies to all cases not final April 15, 1980.

Now that we have decided that *Payton* applies to this case we must address the collateral matter of whether the arrest took place in the appellant's

apartment. The State argues that the arresting officer never entered the appellant's apartment. The record neither supports nor conflicts with the State's contentions in this regard. The record does indicate that the appellant was, in fact, in his apartment when the officer came. In answering the door, the appellant was informed of his arrest. The officer testified that the appellant was not free to leave at that time.

We are inclined to the view of the 9th Circuit in *United States v. Johnson*, 626 F.2d 753, 757 (9th Cir. 1980). The court in *Johnson* stated: "In this case, we are confronted with the situation where the suspect was arrested as he stood inside his home and the officers stood outside his home with drawn weapons. In these circumstances, it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home."

We determine that the arrest of the appellant was the result of a warrantless intrusion into the home without consent and absent any exigent circumstances. Evidence illegally obtained thereby must be suppressed.

We recently had occasion, in *State v. Smith*, 209 Neb. 505, 308 N.W.2d 820 (1981), to make an analysis of the circumstances when evidence is the "fruit of the poisonous tree" and thus suppressible. "The standards to determine admissibility of statements made after an illegal arrest as set forth in *Brown* [*v. Illinois*, 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975)] were reaffirmed recently in *Rawlings v. Kentucky*, 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980). The five factors are: (1) The administration of the *Miranda* warnings to the defendant prior to the statement; (2) The temporal proximity of the arrest and the confession; (3) The intervening circumstances between the initial detention and the challenged statements; (4) The purpose and flagrancy of the official misconduct; and (5) The voluntariness of the statement must be established.

"The first statement given by the defendant does not meet the test for admissibility as set forth in *Brown* and *Rawlings*, and should have been suppressed. Although the *Miranda* warnings were given to the defendant prior to the confession and the rights waived, the temporal proximity of the arrest and the confession is much like the situation in *Brown*. The first statement was separated from the unlawful arrest by approximately 1 hour and there was no intervening event of significance." *Id.* at 510-11, 308 N.W.2d at 823. In the facts at hand, the appellant was immediately taken to the police station after his arrest, and after a short interval, estimated at or around ½ hour, the interrogation began and the appellant made the admissions which were received in evidence. The admissions should not have been admitted into evidence and to do so was error.

This leaves us with the problem of determining whether introduction of the confession was harmless error. Unlike *Smith*, the appellant in this case did not make more than one confession. He did, however, make certain in-court statements which corroborated what he had said in his confession. The one exception was that in his confession he could not remember if he had penetrated the victim's mouth or anus, but in his open-court statement he stated he had definitely not penetrated either the mouth or anus of the victim. We cannot here determine whether appellant's in-court testimony, taken together with all the other evidence, would be sufficient to convict the appellant of first degree sexual assault if his statements to police are suppressed. That question is for a jury.

We cannot say that the admission of appellant's statements to police is harmless error.

Other errors assigned and argued by the appellant are either without merit or, on retrial, are not likely to reoccur and, therefore, we do not discuss them. The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., dissenting in part.

In *United States v. Peltier*, 422 U.S. 531, 95 S. Ct. 2313, 45 L. Ed. 2d 374 (1975), the U.S. Supreme Court held that the decision in *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S. Ct. 2535, 37 L. Ed. 2d 596 (1973), was not applicable to a search made prior to the date of that decision, even though the defendant's appeal was pending at the time of that decision.

The Court noted that since the purpose of the exclusionary rule was to deter unlawful police conduct, evidence should be suppressed only if it can be said the law enforcement officer might properly be charged with knowledge that the search was unconstitutional. See, also, Annot., 65 L. Ed. 2d 1219 (1981).

A similar rule should apply to the *Payton* case, which was decided after the arrest in this case took place.

CLINTON, J., dissenting.

I dissent from the majority opinion for three reasons. First, a careful reading of *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), reveals that its principles apply only to arrests made in the home without warrant after a nonconsensual entry. Second, I do not agree that the opinion in *United States v. Johnson*, 626 F.2d 753 (9th Cir. 1980), cited in the majority opinion, supports the broad proposition the court seems to adopt in its second syllabus, namely, that the use of the voice to convey a message of arrest constitutes either a seizure or an entry barred by the fourth amendment. If the cited case does in fact stand for that proposition, then I disagree with it. Third, the evidence supports the trial court's determination and it is not the function of this court to find the facts anew.

The plain inference from the evidence in this case is that the entry into the home was consensual. The

officer appeared at the door, announced his business, and was permitted to enter. The defendant does not contend that there was a forced or nonconsensual entry and there is no evidence that there was. In *Payton* the court held that the fourth amendment prohibits the police from making a warrantless and *nonconsensual* entry into the home for the purpose of making a routine felony arrest, i.e., one supported by probable cause but absent exigent circumstances. The evidence in that case shows that the police forced their way into the residence by the use of crowbars. A reading of the entire opinion indicates without a doubt that the court was concerned only with nonconsensual entries. It quotes and relies upon an opinion by Judge Leventhal in *Dorman v. United States*, 435 F.2d 385 (D.C. Cir. 1970): "'[a] greater burden is placed . . . on officials who enter a home or dwelling without consent.'" *Id.* at 587. Later the Supreme Court said at 598: "[W]e have found no direct authority supporting forcible entries into a home to make a routine arrest . . . ."

In *United States v. Johnson, supra,* the police appeared at the accused's home and met him at the door with drawn weapons. The court said, "In these circumstances," it is the location, etc. That is not this case. There is here no evidence of either force or show of force.

The majority opinion in the case before us cites no authority for the proposition that the fourth amendment may be violated by a vocal intrusion, that is, an announcement by an officer of his purpose to arrest. As far as I have been able to determine, this is an absolutely unique application of the fourth amendment unsupported by authority.

Lastly, as I have pointed out, this is an appellate court. It is not our function in law actions, which a criminal prosecution is, to decide the facts anew where the evidence clearly supports the trial court's determinations. I would affirm the conviction and sentence.